SETH VROMAN v. SETH D. THOMPSON.

*Justices' dockets—Indorsement of levy—Advice of counsel—Abandonment of levy—Stale levy—Sale by sheriff after leaving office—Venditioni exponas—Removal of execution from files—Defects in dates in certificate of sale—Proof of publication.*

A justice's docket record must disclose jurisdiction and show everything which the statute requires to be entered upon it; but it must also be construed fairly and reasonably, and in view of the fact that the justice is not presumed to be a legal expert. Reasonable certainty, or perhaps " certainty to a common intent " is all that is necessary.

The fact of levy should be indorsed on the execution; but its absence does not invalidate the execution if notice of the levy is duly recorded according to statute (Comp. L § 4685; Act 5 of 1875) and its subsequent indorsement is unimportant.

A client buying land on which execution has been levied cannot, against objection, show that his attorney advised him that the execution was returned satisfied and the levy was no longer a lien, for this would be hearsay. And if the advice were sound it would be unnecessary for protection, while if it were not it could not affect rights depending on the levy.

Abandonment of a levy is not necessarily implied by the sheriff's indorsing on the writ of execution the fact of his levy and the words: " I hereby return the within execution to the clerk of the court for the county of Kalamazoo, as I am commanded by Seth D. Thompson, plaintiff."

*It seems* proper to allow the plaintiff in an execution to dispute the sheriff's indorsement thereon that the plaintiff had directed him to return the execution to the clerk.

A levy may be left to sleep till it becomes stale and an estoppel or some equity arises against the enforcement of the lien or the right to keep it uncancelled.

A sheriff who has made a levy in the life time of the writ of execution and during his own official term, can sell the property on the execution after his term expires; and the old writ is his sufficient authority.

It is not customary in Michigan to resort to the writ of venditioni exponas; it is usual to proceed on the old execution or take out another.

Executions ought not to be removed at pleasure from the files by the plaintiffs therein or their counsel, or by a sheriff who has gone out of office. Such a removal, however, is only an irregularity and does not of itself invalidate a sale on the execution.

In disposing of a bill to quiet title by setting aside an execution sale made on a transcript of a justice's judgment, the circuit court does not exercise an appellate jurisdiction as to the action in which the execution issued.

Where complainant in a bill to set aside an execution sale assumes, for the purposes of the case, that the sale itself is valid, such defects in the sheriff's certificate of sale as wrong dates for the issue of execution and of levy are immaterial as between complainant and the execution purchaser.

An execution sale is presumed regular and made on proper notice if the party attacking it does not make out a prima facie case to the contrary; he cannot, by merely alleging its validity, place upon the execution purchaser the burden of establishing it.

Publication of notice of execution sale is provable by the publisher's affidavit. Comp. L. § 5925. Whether it is provable by the affidavits of those who posted the notices—Q.

A decree which, on bill, answer and evidence and in the absence of any cross-bill, not only dismisses a bill to set aside a cloud on title, but affirmatively declares defendant's title, should be so modified, on affirmance, as to confine it to a mere dismissal.

Appeal from Kalamazoo. (Mills, J.) June 22.—Oct. 10.

BILL to remove cloud from title. Complainant appeals. Affirmed.

*Dallas Boudeman* for complainant.

*Germain H. Mason* for defendant.

GRAVES, C. J.   This bill was filed under the statute to remove a cloud, and the circuit court dismissed it and affirmed the title of the defendant.   Both parties claim from the same source.   In April, 1875, complainant's brother, Charles H. Vroman, by the death of their father, inherited an undivided one-sixth part of forty acres of land in Kalamazoo county, and the controversy relates to this interest. The complainant relies on a conveyance from his brother Charles, on the 6th of August, 1877.   The defendant sets up a purchase dated January 24, 1880, made by him under a sale on a transcript execution in his favor against said Charles H. Vroman.

The regularity of complainant's title is not in question. The dispute concerns the right of the defendant.   Several exceptions are taken to the proceedings to get title under the execution.   It will be conceded that the case rests on the bill, and that no objections are before the Court that are not pleaded.   It will be further conceded that complainant has the affirmative, and can only entitle himself to relief by invalidating the defendant's title on some of the grounds laid.

First.   The proceedings on which the transcript entry was founded began August 12th, 1876, and ended on the 13th of September following.   They are relied on by defendant as showing a judgment in his favor against Charles H. Vroman, before a justice of the peace, for between two and three hundred dollars, a transcript thereof legally certified, and the affidavits required by the statute.

The bill charges that the judgment is void, but points out no defect.   Mention of the supposed fatalities only appears in the brief, and we have no means of knowing that these criticisms were presented or urged to the court below.   For aught that appears, they may be relied on now for the first time.   But suppose this difficulty disregarded, are the special charges of error in the brief really justified?

They are that the record of the justice does not show that any process was either served on the defendant or issued against him; nor that the case was called at the proper time, or that the plaintiff then appeared, or within an hour, or at the place required; nor when the judgment was rendered. Now these are mere conclusions from the record, and whether they are well drawn or not must be ascertained by inspection. They are matters of construction. We are not now interested to inquire what would be the consequence in this suit if the state of the record were as supposed by complainant. The present inquiry is whether his conclusions as to what it shows are right.

The docket record of a justice must receive a fair and reasonable interpretation, and due allowance must be made for what is practically unavoidable. The officers who make these records are not expected to be legal experts or masters of legal forms. Our regulations presuppose that they may be, and generally will be, plain men, not versed in the niceties or in the degrees of precision which are required and practiced in the higher courts, and the law will exact nothing from them in these matters which is not presumably within the scope of their knowledge. Of course the record must disclose jurisdiction, and all docket matters which the law imperatively requires to be entered; but when the question is whether the language of the entries does or does not show these things, it is a subject of construction, and the court must see whether what is written does show or import them; and here the language and style and arrangement must be considered, but without requiring more than reasonable certainty, or perhaps, " certainty to a common intent." Applying this test to the transcript judgment, the result is that the objections of complainant are not tenable.

Second. September 13, 1876, the transcript was filed, and judgment entered and docketed in due form, and at the same time an execution was issued and delivered to Charles Gibbs, the sheriff, returnable the 5th of December following. The sheriff on the same day executed, and caused to

be recorded in the office of the register of deeds, a notice of levy in the form prescribed by the statute (Comp. L. § 4685, as amended by Pub. Act 5 of 1875, p. 3), the notice stating that on that day he had levied on the land in question. But on the 5th of December, the return-day, he delivered the execution to the clerk without any indorsement whatever of levy or return. The complainant contends upon these facts that there was no levy at all. He insists that no levy upon land is legally possible unless a memorandum of the fact is endorsed on the execution.

That the officer must attest the intellectual act of levying by a written memorial of some kind cannot be denied. So much is fairly implied. But it is not admitted that the visible evidence required can only exist in the form of an endorsement on the writ. The statute does not require it, and there is nothing in the nature of the thing demanding it. The object is to have some outward and permanent manifestation of the fact; something which is durable, intelligible and public, in the nature of a record, to which all may resort who are entitled to information and desire it. The necessity is for evidence which is plain and accessible, and this is well afforded by the recorded notice prescribed by the statute. We held in *Campau v. Barnard* 25 Mich. 381 that this notice is primary evidence of the levy; and when a levy is shown by primary evidence to exist, it is not perceived how it can be said not to exist. The supreme court of California have gone much further than *Campau v. Barnard. Blood v. Light* 38 Cal. 657. No doubt it is the better practice to endorse the fact of levy on the execution when it is feasible to do so, but the levy cannot be regarded as imperfect for the want of it, where the proper notice is regularly recorded.

Third. December 31, 1876, Gibbs' term as sheriff expired. Subsequently, and in the forepart of 1877, the execution is again found in his hands, but the case does not explain in what manner he regained it. It was evidently with the defendant's approbation. He then advertised the property for sale in June, but prior to the day of sale Thompson pur-

chased a certificate of sale on execution of the same property of one Annis, and then stopped publication on his own account. And on the 6th of August, 1877, the day on which complainant made his purchase, the clerk received from some one the execution of defendant, but from whom does not clearly appear, and filed it. It then bore an endorsement of levy corresponding to that described in the recorded notice. But it also bore this further endorsement: " I hereby return the within execution to the clerk of court for the county of Kalamazoo, as I am commanded by Seth D. Thompson, plaintiff. June 30, 1877. CHARLES GIBBS, Sheriff ex-officio."

Thompson swears, and the parol evidence corroborates him, that he did not order the return stated in this writing. The complainant insists that if in fact a levy had been effected by the prior proceedings it was discharged and abandoned by this return of the execution, and he denies the right to give parol evidence to dispute the statement in the certificate that Thompson ordered it. He also claims that he became purchaser on the 6th of August in reliance on this return as an abandonment of the levy. There is nothing in the bill to show that he had any knowledge on the 6th of August of the facts relating to the execution, or acted on any such knowledge. Moreover, there is no legal evidence on that subject. It is true, the complainant stated under objection that the late Dwight May, Esq., made examination of the matter for him, and advised him that the execution had been returned satisfied, and was all right; that the levy was no longer a lien. But this was mere hearsay and incompetent under the objection. Were it otherwise it would be matter of construction, and the defendant could not be affected by the fact of the complainant's reliance on the advice he obtained, unless the advice was true. But here, again, if the advice was correct the levy was absolutely destroyed, and it would not be necessary for the complainant to show that he relied on the advice.

It is not material to decide whether it was competent for the defendant to give parol evidence to impeach that part

of the endorsement of June 30th, 1877, which asserted that the return was commanded by the defendant, although it is my impression that it was. Taking the endorsement as it reads, it does not imply a relinquishment of the levy, nor an intent to relinquish it. A purpose of that kind, if one had been entertained, could have been distinctly expressed in less words, and, as there was no occasion for concealment or for equivocation, there is no warrant for imputing an effect or meaning so entirely foreign to the letter and spirit of the certificate. No doubt a levy may be allowed to slumber till it becomes stale or dormant, and parties may so manage as to let in the doctrine of estoppel or some other equity against the enforcement of the lien, or even against the right to have it remain uncanceled; but we have no such questions here.

Fourth. After defendant's obtainment of the Annis certificate of sale the complainant filed a bill to set that sale aside, and the court decreed in his favor. The case was appealed, and this Court, in October, 1879, affirmed the decree. *Vroman v. Thompson* 42 Mich. 145. The defect was that the transcript was taken before the expiration of five days next following the judgment. The defendant then caused his execution to be again placed in the hands of Gibbs, and directed him to advertise and sell pursuant to the levy, and Gibbs complied. The sale was advertised for January 24th, 1880, and took place accordingly. The defendant became the purchaser for $342.82, and some months later Gibbs returned the execution with an endorsement of the sale and certain other proceedings, under his hand and verified by his oath. January 24, 1880, being the day of sale, Gibbs executed a certificate of sale, and caused it to be recorded in the office of the register of deeds two days later. It was discovered to be inaccurate in stating the teste of the execution as August 6, 1877, when the true date was September 13, 1876, and also in reciting the time of the levy as September 13, 1877, when the actual time was September 13, 1876. September 23, 1880, Gibbs made and

caused to be recorded a second certificate, with correct dates, for the purpose of curing the errors in the first.

The bill alleges that the last removal of the execution was illegal, and further on it contains a sweeping charge that all the proceedings were invalid ; but no new objections are pointed out. Some of the points mentioned in argument under this head have been already disposed of.

It has been shown that the facts were sufficient to constitute a levy on the 13th of September, 1876. Hence, the subsequent endorsement of a levy, whenever made, is of no importance. It has also been shown that there is no basis in the bill, and probably not in the case, for claiming that complainant purchased on the faith of a state of facts appearing in the records, and which precluded defendant from using the levy to get an overreaching title. The levy was made in the life-time of the writ and during Gibbs' term of office. He was accordingly competent to make the sale, notwithstanding that his term had expired, and the old writ was sufficient for the purpose. Comp. L. §§ 559, 6111 ; *Wood v. Colvin* 5 Hill 228 ; *Averill v. Wilson* 4 Barb. 180 –183 ; *Remington v. Linthicum* 14 Pet. 84–92 ; *Wheaton v. Sexton's Lessee* 4 Wheat. 503 ; *Childs v. McChesney* 20 Iowa 431 ; *Stein v. Chambless* 18 Iowa 474 ; *Phillips v. Dana* 4 Ill. 551 ; *Stewart v. Severance* 43 Mo. 322.

It has not been customary in this State, in case of failure or inability to sell before the return-day, to resort to venditioni exponas. The usual course, certainly, has been either to proceed directly on the old execution or sue out a new one, by way of continuation, for the purpose of finishing the work commenced under the former. The practice which seems to have been followed in this instance, for the late sheriff or the plaintiff in the judgment, or his counsel, to take the execution from the files at pleasure, was very loose and ought not to be allowed. But there is no admissible view of what occurred in that respect which involved anything more serious than irregularities. There was nothing in the way of fault sufficiently vital to destroy the sale,

and this is not a case in which to review mere errors or irregularities.

In taking cognizance of this suit the circuit court did not exercise appellate jurisdiction, and we are not to proceed as though it did.

The defects in the certificates of sale are immaterial in this controversy; the complainant has no concern with them. The point taken assumes that the prior proceedings are good against his bill, and that the sale is to be deemed valid for the purpose of this case. It would then seem plain that the blunder of the acting sheriff, in making out his certificate for record, could not aid complainant or prejudice the sale as between him and the defendant. The supreme court of New York have held that the requirement to file a certificate is directory merely. *Jackson v. Young* 5 Cow. 269, 270; *Jackson v. Page* 4 Wend. 585–590. Whether this could be maintained as a universal proposition may be open to question; but I think it is entirely correct as regards these parties.

Fifth. In order to prove the notice given of the sale, the defendant submitted certain affidavits which were made at the time the sale took place. One was the affidavit of the publisher of the newspaper, and the others were affidavits of the persons who posted the notices. The complainant's counsel now argues that this was not legal evidence in this case; that complainant attacked the sale as void, and that it therefore devolved on the defendant to give legal evidence to prove that it was valid; and that the witnesses should have been placed on the stand where they could be cross-examined. This position can hardly be deemed serious. On what principle can it be said that by alleging that defendant's title was bad, the complainant compelled the defendant to prove that it was good? It was for complainant to maintain his allegation, and it devolved on him to make out a prima facie case of want of due notice. But he offered no evidence whatever to impeach the sale on that ground. As there was nothing to cast suspicion on that part of the proceeding, it is a reasonable presumption of fact that it

was regular and that proper notice was given. *Wood v. Morehouse* 45 N. Y 368.

The publication is expressly provable by the publisher's affidavit (Comp. L. § 5925), and whether, in view of the difficulties to follow an exaction of personal evidence on the stand, the law will admit proof of posting by the contemporary affidavits of the persons who did the posting, has not been decided, and this case calls for no decision on it.

The conclusion I am compelled to reach is that complainant has failed to make out a case for relief. Whether he might have found more favor on a motion in the court from whence the execution proceeded to set aside the sale, is uncertain.

The exact disposition of the case by the court below demands notice. The hearing was, on bill, answer and evidence, there being no cross-bill, and the complainant's bill was dismissed. But the circuit judge did not stop on denying relief to complainant and dismissing his bill. He went on and made a full affirmative decree for the defendant, establishing his title in all its parts. There was no foundation whatever for so doing, and although the complainant's counsel does not allude to this feature, this Court is not willing to affirm more than the dismissal.

The residue of the decree being without any basis, ought not to remain, and as matter of form should be reversed.

The other Justices concurred.