## JULIA T. HOCHGRAEF v. GEORGE HENDRIE.

*Mortgage forclosure — Effect of death of mortgagor before sale — See head-notes.*

1. The judgment below being affirmed by an equal division of the Court, *nothing* is decided.

2. CAMPBELL, C. J., filed an *affirmative* opinion, concurred in by SHERWOOD, J., holding that a commissioner's deed executed on a foreclosure sale after the death of the mortgagor, who was a party to the suit, and left minor children surviving her, cannot be attacked in an ejectment suit founded on the title thus obtained.

3. CHAMPLIN, J., filed an opinion, concurred in by MORSE, J., favoring a *reversal*, on the ground that the *effect* of the death of the mortgagor was to render all subsequent action in the foreclosure case nugatory.

Error to Wayne. (Speed, J.) Argued April 28, 1887. Decided July 7, 1887.

Ejectment. Plaintiff brings error. Affirmed by an equal division of the Court. The facts are stated in the opinions.

*Ed. E. Kane,* for appellant.

*Frederick T. Sibley (John H. Bissell,* of counsel), for defendant.

CAMPBELL, C. J. In this case the decree and sale were both made during the life-time of Mrs. Woodbridge, and the sale was made to a third party. This sale was made about four years and a half before her death. Had the commissioner done his duty, he would have conveyed the property at once, and filed his report in September, 1861, and it would have been confirmed unless some cause was affirmatively shown.

There is, so far as I have found, no authority which holds that proceedings to carry a decree into execution actually begun, and, as in this case, substantially finished, can be affected by the death of a defendant. It is the every day practice of this and of other courts to grant decrees relating back to the life of deceased parties, and it is always done where the death has occurred after hearing. And where death occurs after the case is ready for hearing, so that the respective rights have become fixed by the record, it causes no abatement. *Rogers v. Paterson*, 4 Paige, 409. As there pointed out, the appellate court may or may not deem it advisable to bring in the representatives before argument, if brought to attention, but the decree is not illegal for not doing so. Even in proceedings at common law, our statutes recognize and continue the rule that, after levy, an execution sale will be had without reference to the death, and, in case of an attachment, it holds, and the land may be sold although defendant dies before judgment. How. Stat. §§ 5946, 6955; *Smith v. Jones*, 15 Mich. 281.

We have no statute requiring confirmation of chancery sales, and the regular practice, both here and in New York, from which our practice is largely borrowed, has always been to convey before confirmation. Our practice, as frequently decided, recognizes that unconfirmed sales are open to revision by the courts of equity for sufficient cause shown; but it has never been held that they are void, and it could not be without importing conditions into the statute. Under the territorial practice no confirmation was required, and its principal

purpose is to enable purchasers to be put into possession by writ of assistance, instead of resort to ejectment. I have found no support for the doctrine that a report of sale need be delayed in its filing or confirmation by the death of a defendant, or that such confirmation will be irregular. It is a matter of course, unless affirmative cause is shown against it; and, where the sale was regularly made, it is never matter of right to recall it. There would be an end to all safety in dealing with judicial sales if an event which generally is not known to third persons, and may not be known to any body, can arrest the satisfaction of decrees and judgments, and destroy titles regular on their face.

It would be pure guesswork to imagine that there was no proper reason for making the sale as it was made. These parties have not seen fit to resort to equity for relief against these ancient proceedings. I do not think any court but the courts of equity can meddle with the proceedings, and I do not see very clearly how this sale can be disturbed anywhere. At all events, it should not be done in an action of ejectment.

SHERWOOD, J., concurred with CAMPBELL, C. J.

CHAMPLIN, J. The plaintiff brought ejectment against defendant, claiming title in fee to the westerly 11½ feet of lot numbered 2, in block 4, of the Witherell farm, so called, in the city of Detroit; said lot being situated on the north side of Jefferson avenue, and extending the same width from Jefferson avenue to Larned street.

Both parties claim title from Mary M. Woodbridge, who died intestate, February 3, 1866, leaving as her heirs at law three children, namely: John T. Woodbridge, born June 5, 1849; Burzina H. Woodbridge, born July 17, 1850; and the plaintiff, born April 7, 1860.

Plaintiff's brother and sister conveyed all of their interest in the premises to her before the commencement of this suit.

Mary M. Woodbridge, the ancestor, on February 15, 1859, was the owner in fee of the premises, and on that day executed to George B. Pease a mortgage covering the whole of said lot 2, to secure the payment of $448.84. This mortgage was duly recorded, and was afterwards sold and assigned to the Farmers' & Mechanics' Bank of Genesee, on the twenty-third day of May, 1859, and the assignment was also duly recorded.

On March 21, 1860, the bank brought suit to foreclose the mortgage in the circuit court for the county of Wayne in chancery, in which the Farmers' & Mechanics' Bank of Genesee was complainant, and Mary M. Woodbridge and William L. Woodbridge were defendants.

At the time of the trial the files of the foreclosure suit were lost, and the calendar entries were introduced in evidence, which showed that on March 21, 1860, the bill was filed and subpœna issued; May 19, subpœna returned served upon defendants; June 26, order *pro confesso* and of reference filed; August 15, report of amount due filed; November 19, order *pro confesso* and of reference filed; August 15, report of amount due filed; November 19, order *pro confesso* ent. and ref.; August 15, decree passed and entered; on April 2, 1863, tax bill of costs filed, $34.50; April 2, enrolled; on March 12, 1866, discharge entered; same day, commissioner's report of sale filed; and on the same day, order *nisi* confirming report of sale filed and entered in chancery records.

It will be noticed that there are three calendar entries of the filing of the order *pro confesso* and of reference; one on the twenty-sixth day of June, 1860, and two on the nineteenth of November, 1860. The report of the amount due appears to have been filed on August 15, 1860, and on the same day a decree passed and entered. There does not appear from the calendar entries to have been any affidavit of regularity filed, as required by the rules and practice of the court.

The order *pro confesso* and of reference was entered in full in chancery rule book, a copy of which was introduced in evidence. The decree was recorded in full, as was also the order *nisi*, and were introduced in evidence. It is recited in this decree that it is based upon the report of Thomas S. Blackmar, one of the commissioners of the court, which bore date August 15, 1860, and upon reading and filing the affidavit of E. Y. Swift, solicitor for complainant, showing the regularity of the proceedings in the cause to take the bill as confessed. The decree bears date August 15, 1860.

A sale was made of the premises, September 5, 1861, by Frederick B. Porter, a circuit court commissioner, to E. Y. Swift, of Detroit, for $5.

On April 2, 1863, as appears by the calendar entries, the decree was enrolled. Porter's term of office expired December 31, 1862, but he did not execute a deed of the premises to Swift until March 10, 1866, and then he purported to do so under the authority conferred by the Session Laws of 1861, at p. 37. Afterwards Swift sold and conveyed the premises to William L. Woodbridge, and the title to that portion thereof in suit was vested by *mesne* conveyances in the defendant, and he has been in the adverse possession of said premises under such claim of title since 1867.

The plaintiff claims the deed from Porter to Swift is void for several reasons, which we will now proceed to consider:

1. The deed from Porter to Swift gave the latter no title, because the sale was made before the decree was enrolled. Counsel for plaintiff relies upon chancery rule 80, adopted in 1858, which provides that no process shall be issued, or other proceedings had, on any final decree, until it is enrolled; and, if it directs the commissioner to sell real estate, he may give notice of the sale before enrollment.

This rule of practice has been in force for many years. It was adopted by the Supreme Court in March, 1853, and stands in the rules adopted at that time as No. 82 (2 Mich.

35). The object of the practice was and is to protect purchasers at chancery sales from loss of material documents from the files, the absence of which might impair or invalidate their title.

. There is no statute requiring enrollment before sale, and the question is whether the enrollment of the decree before execution thereof is jurisdictional. The statute provides for enrolling decrees, which consists merely of attaching together the bill, pleadings, and such other papers. filed in the cause as may, from time to time, by general rules, be directed, together with the taxed bill of costs therein, and annexing thereto a fair engrossed copy of the decretal order, signed by the circuit judge, and countersigned by the register who entered the same. To these the register annexes his certificate under the seal of the court, specifying certain facts, and then files the papers so annexed and the certificate in his office; and this, under the statute, constitutes the enrollment (How. Stat. §§ 6648, 6649). The statute then provides that, after the enrollment, decrees affecting real estate may be recorded.

The statute also provides that any decree that may have been duly passed and signed, and not reversed, vacated, or annulled, and which may have failed to be recorded or enrolled, may be directed by the court having the legal custody of the files in the case in which the decree was pronounced, in its discretion, to be recorded and enrolled by the register of the court *nunc pro tunc;* and, when so recorded and enrolled, the same shall be as effectual as if recorded and enrolled at the end of thirty days after its allowance (How. Stat. § 7256).

These provisions, taken together, show that enrollment before sale under a decree is not jurisdictional, but it relates simply to the regularity of the proceedings. This being so, the validity of the sale for this reason cannot be attacked in a collateral proceeding. Our rules of practice in chancery

were to a large extent adopted from those of the court of chancery of the state of New York; and any construction placed upon them by the court of chancery in that state, prior to our adopting them, would have great weight in the construction which we should feel inclined to place upon them.

As early as 1822, Chancellor Kent had occasion to pass upon the construction which should be placed upon the language of the rule in question here. At that time it stood as rule 35 of the rules of that court, being the same as rule 111 in the revision of 1837. In *Goelet v. Lansing*, 6 Johns. Ch. 75, a motion was made to set aside a sale in a foreclosure case because the sale was made before the decree was enrolled, which was claimed to be in violation of the rule which declared that "no process is issued, or other proceeding had, on any final decree, until the same shall have been enrolled." The chancellor said:

" The thirty-fifth rule has, in practice, as I have been informed, been applied only to process of execution *sub pede sigilli*, and not to decretal sales of mortgaged premises made without process of execution; and the special direction of sales in all such decrees (and which was also contained in the decree in this case) seems to have been considered as dispensing with so much of the thirty-fifth rule as requires a previous enrollment of the decree. The court of chancery in England will, on special application, grant an order for a short writ of execution without waiting for the enrollment (Newland, Pr. 194). The decrees for sale of mortgaged premises may be somewhat analogous to these short writs of execution, and there is certainly ground for doubt whether the provision in the thirty-fifth rule is not in such cases superseded."

Chancellor Walworth, in *Minthorne v. Tompkins*, 2 Paige, 102, also places a construction upon the rule, and says that it did not apply to the case of a sale under an interlocutory order of the court; that in such case the deed might be executed before enrollment; but that, if the decree was final as to the whole subject-matter of the sale, it must be enrolled

before any conveyance could be executed, although, as to other branches of the suit, another decree might be necessary before the cause was finally disposed of by the court. I do not understand this case as overruling that of *Goelet v. Lansing, supra*. The report does not show the character of the sale upon which the decision was made; and, inasmuch as no allusion is made to the case of *Goelet v. Lansing*, I presume that it was not a sale under a foreclosure, which requires the sale to be reported to the court for confirmation. At all events, advantage could only be taken of the irregularity, if it is one, in the suit itself, by an application to the court by appropriate proceedings for that purpose.

2. It is claimed that the deed is void because it was executed and acknowledged on March 10, 1866, and, as there is no proof to the contrary, is presumed to have been delivered on that date, and the report of sale and order of confirmation was not filed and entered until March 12, 1866.

There is no evidence nor finding of fact in the record as to the precise time when the deed was delivered. It is found as a fact, however, that the deed was recorded on the twenty-fifth day of September, 1866. This fact would be evidence that it was delivered on or before that date; but the presumption that the officer did his duty, and did not deliver the deed until after the order *nisi* had expired, is as strong, and I think stronger, than the presumption arising from the absence of evidence that it was delivered at its date.

The general doctrine in this country is that, until the sale is confirmed by the court, the sale is incomplete, and neither the purchaser nor any one else has any right to regard the sale as conclusive until it is confirmed. *Demaray v. Little*, 17 Mich. 386.

In some localities it has been the practice for the officer who makes the sale to deliver the deed without awaiting the confirmation; but no absolute title passes to the purchaser, nor is he entitled to possession, until the sale is confirmed.

*Howard v, Bond,* 42 Mich. 131.   But when that is done, the title relates back to the time of sale, and carries such tit'e from the delivery of the deed.   In England the practice is to withhold the deed until the final order confirming the sale becomes absolute (*Ex parte Minor,* 11 Ves. 559), and this is the better practice.

3. Because the deed is not executed by Porter in his official capacity; the words which follow his name, viz., "Circuit Court Commissioner," in the body and at the end of the instrument, being merely a description of the person.

The law requires the deed to be executed by the circuit court commissioner, and so also does the decree; and the deed in question purports to be executed by the commissioner in pursuance of the decree, and in order to carry it into effect.   His official capacity sufficiently appears.

4. Because it was not executed until four years and a half after the sale, and is not in the form prescribed by the statute. It does not state the time and place of sale, nor does it state the date of the mortgage, nor when it was recorded.   Counsel for plaintiff bases this objection upon the Session Laws of 1863, p. 160, and 2 Comp. L. 1871, §§ 5153, 5154.   The position is not tenable.   It is not necessary that the deed should contain a recital of the time of day the sale was made.   It does state that previous notice was given of the time and place of sale as required by the decree, and no law required that the deed should contain the date of the mortgage, or where it was recorded, until the enactment of 1867, Act 105, which was after the deed was executed.

5. Because Porter was not a circuit court commissioner when he executed the deed, and had no authority to make it. This point is well taken unless Act No. 45 of the Session Laws of 1861 applies to this case.   The act reads as follows:

"An Act to continue the authority of circuit court commissioners after the expiration of their term of office in certain cases.

"Sec. 1. The People of the State of Michigan enact, That in all cases where any circuit court commissioner shall have advertised real estate for sale under and by virtue of any decree or order of any court of this State, and his term of office shall expire before the sale shall be consummated, it shall be competent and lawful for him to proceed to complete the sale and report thereof, and do all things necessary to perfect the same, as if his term of office had not expired; and for such purpose his power and authority shall continue until all such business is fully closed."

There is no doubt of the competency of the Legislature to confer such authority upon ministerial officers, and its exercise is oftentimes necessary to protect the rights of parties and prevent a failure of justice. Under this statute the authority may be exercised at any time after the expiration of office, unless rights have intervened and become vested in favor of third persons, which circumstance I shall consider and discuss under the next point taken by plaintiff's counsel. The sale of the premises in question was made in September, 1861, before the commissioner's term of office expired, and after the act above cited had taken effect as law. The act was intended to be prospective in its operation, and applies to the case under consideration; and this brings us to the next and main point in the case.

6. Because Mary M. Woodbridge, the mortgagor and owner of the property, died on February 3, 1866, five weeks before the deed was made by the commissioner, and five weeks before a report of sale, which occurred nearly four years and a half previously, was made, or order *nisi* of confirmation entered. Upon her death her minor heirs above mentioned became seized in fee of the real estate in question, and the right to redeem from the mortgage, and to question the legality and regularity of the sale under the decree, became vested in them; and no steps were taken previous to making the report of sale, or executing the deed or entering the order of confirmation, to make them parties to the suit.

The effect of the death of Mrs. Woodbridge was to render the action in the case which succeeded her death nugatory.

I think this position is well taken. By our decisions the sale is not consummated until it is confirmed by order of the court, and from this order the defendants have a right of appeal. *Demearay v. Little,* 17 Mich. 388; *Detroit F. & M. Ins. Co. v. Renz,* 33 Id. 298; *Perrin v. Fitters,* 35 Id. 233.

It needs no argument to show that when, by the death of one of the parties to a chancery suit, rights have devolved upon new parties which will be affected by the further proceedings, before such further proceedings can be taken the parties to be affected must be brought before the court. Of what avail is the right to appeal from the sale, and the order confirming the same, to these infants, if the complainant may proceed after their rights have accrued, but without notice to them, and obtain an order to confirm a sale, made more than four years before, of valuable land for the paltry sum of $5?

The rule is clear that wherever a suit abates by death, and the interest of the person whose death has caused the abatement is transmitted to that representative which the law gives or ascertains, as an heir at law, or an executor or administrator, so that the title cannot be disputed, at least in a court of chancery, but the person in whom the title is vested is alone to be ascertained, the suit must be revived before further proceedings can be taken affecting the rights of such representative. Story, Eq. Pl. § 364; Mitf. Eq. Pl. (by Jeremy) 69; Cooper, Eq. Pl. 63, 64; Barb. Parties, 559; Mitf. & T. Eq. Pl. 167; *Brown v. Thompson,* 29 Mich. 72.

The rights of the heirs at law in this case were not, and cannot be, divested or affected by what was done in the cause subsequently to the death of their ancestor. It follows that not only was the execution of the deed unauthorized, but also the order confirming the sale. *Anderson v. Anderson,*

20 Wend. 585; *Washington Ins. Co. v. Slee,* 2 Paige, 365, 367; *Vroom v. Ditmas,* 5 Id. 528; *Thomson v. Dudley,* 3 Edw. Ch. 137; *Zægel v. Kuster,* 51 Wis. 31; *Owings Case,* 1 Bland, 409.

There is another fact appearing upon the record, though not pointed out by counsel, which appears to me has an important bearing upon the claim of the defendant based upon the foreclosure.

Comp. L. 1857, § 3515, enacts that,—

"Upon producing and filing with the register with whom any decree may have been entered a written acknowledgment, by the party in whose favor such decree was rendered, that he has been fully paid and satisfied the amount of all moneys directed by such decree to be paid, certified, by some officer authorized to take the acknowledgment of deeds, to have been duly acknowledged before him by the party signing the same, the register shall enter in the docket of such decree a note of the satisfaction and discharge thereof, and such decree shall thereupon be discharged, and be of no force or validity."

The calendar entries show that on March 12, 1866, and before the entry under the same date of the filing of the commissioner's report of sale, and before the entry of the order *nisi* confirming such report, a discharge was entered. What significance does this entry have unless it refers to the discharge authorized by the statute? And, if such decree was in fact discharged, the deed would be a nullity. I mention this as a difficulty appearing in the defendant's case, and not as a matter controlling the decision.

Without noticing the other points taken by the plaintiff against the validity of the foreclosure proceedings, I think the facts found do not support the conclusions of law, and that the judgment should be reversed, and a judgment entered here for the plaintiff.

MORSE, J., concurred with CHAMPLIN, J.