## LANT v. MANLEY et al.

### (Circuit Court of Appeals, Sixth Circuit. July 8, 1896.)

### No. 409.

1. ATTACHMENT AND EXECUTION—LEVY ON EQUITABLE INTEREST.

As attachments and executions may be levied on equitable interests in real estate in Michigan, a bill in aid of an execution or attachment so levied will be entertained in the federal courts of equity sitting in that state.

2. ATTACHMENT LIEN—SURRENDER.

A return of nulla bona on a first execution after judgment is not a surrender of a lien on real estate secured by an attachment levied before judgment.

3. SAME.

Where the rights of third parties do not intervene, no delay in the levy, after judgment, of an execution on real estate, destroys the lien thereon arising from an attachment levied before judgment, unless such delay shows an intention to abandon the lien, and a delay of nine months does not show such an intention.

4. ATTACHMENT AGAINST DECEDENT—ENFORCEMENT.

How. Ann. St. Mich. § 5946, providing that a claimant having a lien upon the estate of the deceased, by attachment previous to his death, may, on obtaining judgment, have execution against such estate, justifies a court of equity in aiding an execution levied under such circumstances, without regard to the settlement of the decedent's estate in the probate court.

5. ACTION AGAINST EXECUTORS.

How. Ann. St. Mich. § 5902, provides that no action shall be commenced against the executor or administrator, except actions of ejectment, or other actions to recover the seisin or possession of real estate, and actions of replevin. *Held*, that a suit may be brought, in aid of an attachment levied on land claimed by complainant to belong to the attachment debtor, against the executors of another person, who are in possession thereof as a part of their testator's estate.

6. BILL IN EQUITY—AMENDMENT.

It is error to strike from the files an amendment to the bill which explains the delay of complainant in bringing suit, and is an answer to the charge of laches, upon which a demurrer to the bill has been sustained.

7. FRAUDULENT CONVEYANCE.

The fact that conveyances of land were matters of public record did not put a creditor of the grantor on notice that there was no real consideration.

8. SAME—LACHES.

A bill filed by a judgment creditor seeking to reach property fraudulently conveyed, which discloses a constant and successful effort on the part of defendants to cover up and withhold from complainant any information with respect to the actual consideration of the conveyances, sufficiently excuses complainant's delay in bringing suit.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

This is an appeal from a decree of the circuit court of the United States for the Eastern district of Michigan dismissing a bill in equity on demurrer. 71 Fed. 7. The complainant below is George Lant, Sr., a citizen of Indiana. The defendants are Charles H. Manley, administrator of the estate of Elijah W. Morgan; Edward D. Kinne and Otis C. Johnson, executors and trustees under the will of Lucy W. S. Morgan; Lucy D. S. Parker, individually and as executrix of the last will and testament of Franklin L. Parker,—all citizens of Michigan. The complainant brings his bill, for himself and all other credit-

ors of Elijah W. Morgan, deceased, to subject certain real estate and equitable assets averred in the bill to have been transferred without consideration by said Elijah W. Morgan to the defendants, or their predecessors in title, to defraud the complainant and other creditors of said Morgan. The bill avers that on July 12, 1881, the complainant obtained a judgment against Morgan in the circuit court for the county of Washtenaw, in Michigan, for $5,882.72, with interest at 10 per cent. per annum; that on February 2, 1891, complainant brought suit upon this judgment against Morgan in the court below, and procured the levy of a writ of attachment upon certain real estate, as the property of Morgan, which then was, and still is, in the possession of the defendants Kinne, Johnson, and Parker, or some of them, as executors and trustees under the will of Lucy W. S. Morgan, wife of E. W. Morgan; that the land attached had been conveyed by Morgan to his wife, in pursuance of a fraudulent conspiracy, in order to defraud his creditors; that the original judgment in the state court was founded on three promissory notes of Morgan dated November 20, 1873, and payable 18 months after date to one Hattie C. Eames, and on December 16, 1876, for a valuable consideration, indorsed and transferred to the complainant; that in June, 1893, after Morgan's death, by the judgment of the court below complainant obtained a judgment for $8,702.20 against Charles H. Manley, administrator of Elijah W. Morgan, against whom the suit had been revived; that on June 19, 1893, a fi. fa. was issued to the marshal of the district, commanding him to make the judgment out of the goods, chattels, lands, and tenements of the estate of said Elijah W. Morgan; that on September 8th the marshal made a return that there were no goods, chattels, lands, and tenements in his district, whereof he could make the damages and costs mentioned in the writ; that on the 21st day of February, 1894, complainant sued out an alias fi. fa., and that said writ was duly levied on April 2, 1894, upon the lands and tenements which had been attached under the writ of attachment already referred to. The complainant offers in his bill to share the benefit of the lien acquired by his attachment with any and all creditors who shall come in and prove their claims, and contribute to the expense of his suit. The bill, in much detail, sets out the number of pieces of property of which it charges Elijah W. Morgan was seised and possessed in November, 1873, and these descriptions include the particular real estate which was attached in the suit at law in the court below. The thirty-third paragraph of the bill is as follows: "(33) And your orator further shows, upon information and belief, that in the year A. D. 1873, and from that time until the death of said Lucy W. S. Morgan in 1887, the said Elijah W. Morgan was indebted, not only to your orator as aforesaid, but to a considerable number of other persons, in large amounts, and was insolvent; and, further, that said Elijah W. Morgan, in the year A. D. 1874, combined and confederated together with his said wife, Lucy W. S. Morgan, with her nephew, said Franklin L. Parker, and said Lucy D. S. Parker, who was then his wife, to so sell, transfer, and incumber all of his property to cover and conceal the same from his said creditors, and from any execution which might be issued against him; and also that any and all conveyances under which the said defendants, or any of them, claim title to said pieces or parcels of land hereinbefore described, were made in pursuance of such combination, confederacy, and agreement together, and for the fraudulent purposes last above mentioned; and also that said Lucy W. S. Morgan, Franklin L. Parker, and Lucy D. S. Parker, from the time of the last above mentioned, well knew the insolvent condition of said Elijah W. Morgan, and of his indebtedness, and acted together with him in the making and receiving of such transfers and conveyances as last above mentioned, for the purpose of aiding him in hindering, delaying, and defrauding his said creditors." The bill further avers that Franklin L. Parker died in 1894, and that his wife, Lucy D. S. Parker, became his executrix, and is possessed as such of all the property received by said Parker from Morgan in pursuance of the conspiracy above described. A large part of the bill is made up of averments tending to show that the defendants are in possession of many documents and papers from which the facts averred with reference to the fraudulent combination alleged, and the actual ownership by Morgan of the property described, would appear, for the purpose of basing a prayer for discovery. The forty-third paragraph of the bill was directed to the possible objection that complainant

has been guilty of laches, and averred that since 1876 until the filing of the bill he had used all means at his command to find property of Morgan on which to levy, but that, by reason of that fraud and fraudulent concealment of the same by the defendants, he had been prevented from obtaining satisfaction of the judgment. The prayer of the bill is for an accounting of the personal assets of Morgan in the hands of the defendants, a marshaling of the debts, the appointment of a receiver to take possession of lands and personal property, a sale of the real estate described in the bill, and a distribution. There is also a prayer for general relief. The bill was demurred to by all the defendants except Morgan's administrator, Manley. The demurrer was sustained in favor of the defendants sued as executors, on the ground that they held the real estate sought to be reached under the orders of the probate court, and that federal process against it would therefore lead to a conflict of jurisdiction. It was sustained in favor of Lucy D. S. Parker on the ground of complainant's laches, apparent on the face of the bill, in pursuing the remedy he now seeks to have enforced.

In order to meet the objections found by the court to the bill on the ground of complainant's laches, the complainant's counsel tendered an amendment to the bill, which was permitted to be filed by the court by order of September 16, 1895, and the defendants were given leave to answer within 15 days. Upon application by the defendants, the time to answer was extended 10 days. No answer was filed by November 20, 1895, when an order was made extending the time to answer 20 days from that date. On the 30th of December, 1895, the defendants came in, and made a motion to strike the amendment to the bill from the files. The motion was granted, and accordingly, on the 10th of February, the amendment was stricken from the files, and the decree dismissing the original bill was entered by the court. The amendment is very long, and sets forth in minute detail the efforts of the complainant to collect his debts. He avers that for three years after 1876, when he came into possession of the notes, he held them only as collateral security, and that the owners of the notes objected to his incurring any expense to collect them, because other notes of Morgan, in which they were interested, were in the hands of a lawyer of Ann Arbor, where Morgan lived, for collection, and they hoped thus to collect them all; that in 1879 the lawyer reported that he could make nothing out of Morgan, and thereupon complainant, acquiring absolute title to the notes, used every means available to him, who was in active business in Evansville, Ind., to collect the notes; that he employed a leading lawyer of Ann Arbor, who obtained judgment in a state court of Michigan on the notes in 1881, and that thereafter he employed lawyer after lawyer to uncover Morgan's suspected frauds in concealing his property, but all to no purpose; that there were many other claims against Morgan, aggregating a large sum, in the hands of attorneys in Michigan, which could not be collected, and that it seemed impossible to discover evidence upon which Morgan's conveyances to his wife and others could be impeached for fraud; that it had been represented by Morgan that his conveyances to his wife were for the consideration of $25,000; that in 1889, in a trial in the state of New York, wherein Morgan's executors were parties, and Morgan's transactions with his wife were the subject of investigation, it was developed that no such consideration was in fact paid; that complainant, being advised of this trial, and of the facts developed therein, then employed a lawyer to look up the property of Morgan conveyed to his wife, and in 1891 levied the attachment, and began the suit at law in the court below on the state judgment; that after the attachment Morgan died, and the complainant was obstructed in procuring the appointment of a proper administrator by the executors of Lucy W. S. Morgan, and went from the probate court to the circuit court, on appeal, in order to secure an administrator who should be willing to enforce the rights of Morgan's creditors; that then complainant and the administrator of Morgan took proper proceedings to compel a disclosure by Lucy Morgan's executors of the real and personal estate of Morgan which they held, but they refused to answer as directed by the probate court, and the probate court refused to compel them to answer; that one of the executors was judge of the circuit court of Michigan, in the district in which Ann Arbor is situated, and wielded much influence to prevent disclosure; that, in the desire to obtain information, complainant applied for a mandamus to the supreme court of

Michigan to command the probate court to use its power of contempt to enforce answers from the executors, but that that court held the writ would not lie in such a case. It appeared from the amendment that, from 1879 until the filing of the bill below, complainant had one, and often two, attorneys employed to discover property of Morgan out of which to make his debt. The bill did not show exactly when Morgan's deed to his wife was recorded, but it may be inferred that it was some time in 1873 or 1874.

Jasper C. Gates, for appellant.
Bowen, Douglas & Whiting, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Counsel for appellant upon the argument in this court abandoned that part of his appeal which challenged the action of the court below in dismissing the bill as against Lucy D. S. Parker personally, and as executrix of her husband, Franklin Parker, and in so far as it sought to subject to the judgment against Morgan anything but the real estate attached and levied upon in the suit at law in the court below. The bill is to be treated, then, as a bill in aid of complainant's execution at law. As attachments and executions may be levied on equitable interests in real estate in Michigan, such bills are there frequent and well-recognized equitable remedies (Lasher v. Stafford, 30 Mich. 369; Doak v. Runyan, 33 Mich. 75; Pursel v. Armstrong, 37 Mich. 326), and will be entertained in the federal courts of equity sitting in that state (Lorman v. Clarke, 2 McLean, 569, Fed. Cas. No. 8,516).

1. It is first objected that the complainant lost his lien by attachment because of the nulla bona return on his first fieri facias, and his unreasonable delay in suing out the alias writ. The judgment was rendered in June, 1893, and the first execution issued in the same month. The nulla bona return was made in September, 1893, and the alias writ issued in February, 1894, and was returned after levy on the attached lands in April, 1894. The second writ issued, therefore, less than nine months after the rendition of the judgment. Was the nulla bona return an abandonment of the attachment? If not, was the failure to levy on the attached lands until more than eight months after the judgment an unreasonable delay? Both these questions must be answered in the negative. It is true that an attachment upon personal property is ordinarily discharged by the return nulla bona on an execution issued upon the judgment. It is also true that the duty of the judgment creditor to use reasonable dispatch in levying execution upon the personal property attached before judgment is imperative. And, if the property here seized were personal, the contention of appellees might succeed. But it is real estate, and with respect to attachments on that kind of property we conceive that a somewhat less strict rule of diligence applies. Personal property can only be attached by actual seizure by the sheriff, marshal, or other executive officer. The lien on it can only be maintained by its manual retention in official custody. A release of it by the attaching officer for any purpose destroys the lien. The necessity

for excluding the owner from beneficial enjoyment in the thing attached has justly given rise to the requirement that when his judgment is obtained the attaching creditor shall speedily satisfy it out of that which he has so long withheld from the defendant owner. If, instead of doing so, the issue of execution is followed by a return nulla bona, it is inferred against the judgment creditor that he proposes to rely on other property for his debt, and that he has abandoned his lien. Or, if no execution is issued upon a judgment within a reasonable time, the lien is to be regarded as abandoned, because the defendant owner of the attached personalty may justly complain that, if he is not to have the use of it, he ought at least to have it sold, and the proceeds of it applied to the payment of his debts. Avery v. Stephens, 48 Mich. 249, 12 N. W. 211; Trowbridge v. Bullard, 81 Mich. 453, 45 N. W. 1012; Butler v. White, 25 Minn. 433; Speelman v. Chaffee, 5 Colo. 256; Rickards v. Cunningham, 10 Neb. 417, 6 N. W. 475. No case has been cited to us, however, in which it has been held that a return of nulla bona on a first execution after judgment is a surrender of the lien on real estate. The case of Blish v. Collins, 68 Mich. 542, 36 N. W. 731, cited for appellee, was certainly not such a case. There a levy was made on the attached land, and then withdrawn, and no claim was made under the attachment or levy. Nor has any case been called to our attention in which an attachment on real estate has been held to be discharged by delay in the levy of an execution on the land attached after judgment, unless the statute expressly limits the time within which execution and sale after judgment must take place to preserve the lien, as in Maine. Croswell v. Tufts, 76 Me. 295. There is a remark in a decision of the supreme court of Michigan, in considering the objection to the validity of a lien by attachment on real estate, that the delay in levying execution in that case—of two months—was not unreasonable. This, it is argued by counsel for the appellees, is a recognition by implication that a longer time might be unreasonable. We are not prepared to deny that a lien on real estate, secured by attachment, might be abandoned by great delay in levying execution, especially where the rights of third parties may have intervened between attachment and execution, but there is nothing of the kind in the case at bar. The character of the real-estate lien is such as to make delay in execution much less burdensome to the debtor, and to relax the stringency of the rule requiring speed in execution on attachments of personalty. Section 7993 of Howell's Statutes provides for the attachment of real estate, and states that the levy shall be made in the manner provided by law for the seizure of such property on execution. Section 7995 provides that the real estate attached shall be bound, and the attachment shall be a lien thereon from the time when a certified copy of the attachment, with a description of the real estate attached, shall be deposited in the office of the register of deeds in the county where the real estate is situated. Section 7996 provides:

"Each register of deeds shall note on every such certified copy the day, hour and minute when he receives it; and shall also enter in a book to be kept

by him for that purpose, the names of the parties in such writ, designating who is plaintiff and who defendant, the time when the land was attached, and the time when such copy was deposited."

Section 8017 provides:

"That any attachment on real estate shall also be discharged upon the record thereof by the register of deeds in whose custody it shall be, whenever there shall be presented to him a certificate executed by the plaintiff, his personal representatives or assigns, duly acknowledged specifying that such attachment has been removed or otherwise satisfied or discharged; or a certified copy of the action of the court removing the same."

It would seem to be clear enough from these provisions that the attachment upon real estate is nothing more than a statutory mode of recording a lien on real estate, in anticipation of a judgment and sale of the same to pay the debt. It does not interfere in the slightest with the use and enjoyment of the land by the owner, and the exigency present in the attachment of personalty, already pointed out, has no existence where realty is the subject of process. In Walkley v. Bostwick, 49 Mich. 374, 13 N. W. 780, the action was brought against the sheriff and one in whose behalf the sheriff had made an alleged wrongful levy on the lands of the plaintiff under an execution against another person, and judgment was given for plaintiff in the court below. In reversing this judgment the supreme court of Michigan, by Mr. Justice Cooley, said:

"At most, the act of defendants amounted to no more than a formal assertion that the ownership of plaintiff's land was in John Walkley, and that they proposed to maintain that assertion by legal proceedings. * * * When a sheriff levies his execution on the personal property of one who is a stranger to the judgment, there is a positive wrong, because there is a positive interference with the owner's possession. There might also be a trespass in the levy of execution on lands, if the officer were to go upon the lands for the purpose, but it is not pretended that he did so in this case. Here the plaintiff finds her injury in the bare fact of levy; in other words, in the bare fact that these two defendants, without malice, have asserted that another party owns the land. But in law this is not an actionable wrong."

Taking into consideration the real nature of the attachment, we think that, in a case where the rights of third parties do not intervene, no delay in the execution, after judgment, ought to destroy the lien, if it falls short of clearly indicating an intention to abandon the same. Does a delay for nine months in this case indicate such an intention on the part of the complainant? We are very clear that it does not. In Speelman v. Chaffee, 5 Colo. 256, it was held that the delay of a year in issuing execution, after judgment, on an attachment on personal property, was not unreasonable, or such as to indicate abandonment. If this be a sound view in the case of personalty, then, for the reasons stated, a delay of nine months in case of real estate ought certainly not to work an abandonment.

2. But how as to the nulla bona return? Where that has been held to work an abandonment in case of personal property, the return has usually appeared to have been made by direction of the plaintiff or his counsel. In such a case there is little room for doubt of an intention to abandon. But, even if cases are found in which such a return without direction by plaintiff has been held to work a release of the lien on personal property, it must be remembered that the

power of the officer to release the lien, dependent as it is on his custody, is plenary, and the only recourse of the plaintiff is against the officer. But over the existence and maintenance of a real-estate lien the plaintiff and his attorney have much more control, and are much less subject to injury by the negligence or wantonness of the officer. In Peck v. Bank, 51 Mich. 353, 16 N. W. 684, the supreme court of Michigan said:

"When the execution is levied upon real estate only, as in this case, the sheriff has no interest in it, beyond his fees for making the levy, until the money is collected or the sale made; and then he is entitled to his poundage on the amount collected, or for which it is sold. In such case, until the sale is made the sheriff incurs no risk or responsibility. He is not entitled to the possession of the property, and is constantly subject to the direction of the plaintiff in the execution as to further service in making the collection."

There is nothing in the record to show, and we cannot presume, that the return of nulla bona on the original fieri facias was by direction of counsel for the judgment creditor. If not, certainly the marshal could not, by his negligence in failing to observe the existence of the attachment on the land, and to levy thereon, deprive the party of his record lien. Vroman v. Thompson, 51 Mich. 452, 16 N. W. 808; Braley v. French, 28 Vt. 546; Dawson v. Daniel, Fed. Cas. No. 3,669; Kneel. Attachm. 300; Wade, Attachm. § 260; Drake, Attachm. § 240. In our opinion, the issuing of the original writ, and its return nulla bona, are not enough to constitute an abandonment of the lien secured by the attachment, and the alias writ was in time to perfect the lien, and to make it available to the complainant in this suit.

3. Did the fact of Morgan's death, and the appointment of his administrator, prevent the enforcement of complainant's remedy against the land attached by a proceeding in the court below, without regard to the settlement of Morgan's estate in the probate court of Washtenaw county, Mich.? It is contended that the benefit of the attachment, if any there was, must be enjoyed by application to the probate court, and that comity requires that no execution should be enforced against the land which, if the complainant's claim is right, belongs now to Morgan's administrator, and should be in his custody, and under the control of the probate court. Section 5946 of Howell's Annotated Statutes provides that "a claimant having a lien upon real or personal estate of the deceased, by attachment previous to his death, may, on obtaining judgment, have execution against such real or personal estate." It seems to us clear that this provision of the statute intended that the lien secured by attachment upon real estate of the deceased debtor before his death should be enforced as if he were alive, and that proceedings in execution and sale should take place without regard to the settlement of his estate in a probate court. Without considering, therefore, the question of comity between the courts. we think this special statutory exception is quite sufficient to justify a court of equity in aiding the execution which is expressly permitted by the written law of Michigan. Smith v. Jones, 15 Mich. 281; Hochgraef v. Hendrie, 66 Mich. 556, 557, 34 N. W. 15.

4. Was the fact that the land attached was in the possession of the executors and trustees of Lucy W. S. Morgan a reason for withholding all relief from the complainant, because these executors and trustees had taken possession of the same by virtue of Lucy W. S. Morgan's will, under the authority and direction of the probate court of Washtenaw county, before the attachment? The attachment, and the bill in aid of the attachment, it will be observed, were adversary proceedings against the estate of Lucy W. S. Morgan. These were proceedings to obtain possession in specie of property claimed not to belong to her estate. They were, in this respect, quite like a suit in replevin, or a suit in ejectment. The claims here depended not upon her title, and were not made under and by virtue of her will. Complainant did not claim as a creditor of her estate, but as the owner of property which was wrongfully in the custody of her executors, and which belonged to complainant, for the purpose of satisfying his debt, because it had belonged to his debtor. This makes a case very different from that in which a person claims an interest in property in the custody of an executor or administrator through his relation to the testator or intestate, as a distributee or creditor of his estate. The latter was the case in Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, and we should hesitate before extending the principle there laid down to adversary proceedings of the character of those here under consideration. But we are entirely relieved from discussing the distinction suggested as a matter of federal jurisdiction in equity by a specific provision of the Michigan statute with respect to the power of administrators and executors, in which the distinction is expressly made the law of Michigan. Section 5902 of Howell's Statutes enacts, "No action shall be commenced against the executor or administrator, except actions of ejectment, or other actions to recover the seizin or possession of real estate, and actions of replevin." In Manufacturing Co. v. Benjamin, 55 Mich. 334, 21 N. W. 360, the Michigan supreme court said of this provision, "The manifest object of the statute is to permit suits to be brought against executors and administrators to try the title or right to possession of both real and personal property during the progress of the settlement of the estate." Complainant here asserts his right by virtue of the attachment and execution upon the lands of E. W. Morgan, which, as already shown, he had the right to enforce after Morgan's death, as against Morgan's administrator, and, claiming through Morgan, he asserts Morgan's right against property in the hands of the executors of Lucy W. S. Morgan, and seeks to obtain possession and seisin of that real estate for the purpose of subjecting it to the payment of his debt. The case at bar comes clearly within the letter and spirit of the statute, which entirely removes the necessity for our considering the nice questions which have been argued before us of comity between federal courts of equity and probate courts in the administration of estates and decedents.

5. If the amendment to the bill explained the delay of complainant, and was an answer to the charge of laches upon which the demurrer to the original bill had been sustained, it was, in our opinion, the duty of the court to allow the complainant to file it; and, having al-

lowed the complainant to file it, it was error in the court to strike it from the files, if it met the objection which had been found in the original bill. Riddle v. Whitehill, 135 U. S. 621, 10 Sup. Ct. 924.

Coming now to the question of laches, we are clearly of the opinion that the efforts made by the complainant to find property of Morgan out of which to satisfy his claim were persistent and diligent. The mere fact, if it is to be inferred as a fact from the averments of the bill, that the conveyances of land from Morgan to defendants' predecessor in title, Lucy W. S. Morgan, were matters of public record, did not put the complainant on notice that there was no real consideration for the deeds. Moreover, the bill avers that the defendants caused it to be understood by statements that the transfers were made for good considerations, to wit, $25,000, and that not until 1889 did the complainant discover any evidence with which to impeach such claim. We think that the averments of the amendment are fully up to the requirements of the strictest rule in regard to laches, and that, giving them their full effect, they disclose a constant effort on the part of all the defendants to cover up and withhold from the complainant any information with respect to the actual consideration upon which such conveyances were based. If the averments of the bill are true, it is made sufficiently to appear that Morgan was a man with a large amount of property and a large indebtedness, who had succeeded, by the aid of the defendants, in defeating all his creditors for years, and in withholding and secreting the evidences by which it could be proven in a judicial proceeding that the real estate and other property really belonging to him were in fact his. Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382; Traer v. Clews, 115 U. S. 528, 6 Sup. Ct. 155; Kirby v. Railroad Co., 120 U. S. 130, 7 Sup. Ct. 430; and Bailey v. Glover, 21 Wall. 342,—are all cases laying down the principle that, where a party injured by the fraud remains in ignorance of it without any fault or want of diligence on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances, or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. The strictest rule on the subject of laches which the authorities will justify is that, before delay in filing a bill to rectify fraud can be excused, it must appear either that the fraud was actively concealed, or that it was of such character as to conceal itself, and that the complainant has been diligent in his investigations. Pearsall v. Smith, 149 U. S. 231–236, 13 Sup. Ct. 833. Judged by either test, it is manifest that there is no such laches on the face of the bill, as it was proposed to amend it, as to make it demurrable. The result is that the action of the court below in striking from the files the amendment to the bill was erroneous, and that the bill as amended was not demurrable, so far as it sought relief against Kinne and Johnson, executors of Lucy W. S. Morgan, and Manley, administrator of E. W. Morgan, in aid of the attachment and levy upon the lands attached in the suit at law. The decree of the circuit court is therefore reversed in part, with directions to permit the filing of the amendment to the bill, and to require Kinne and Johnson, executors of Lucy W. S.

Morgan, and Manley, administrator of E. W. Morgan, to answer so much of the bill as seeks relief in relation to the lands attached, and the lien thereon; and the remainder of the decree is affirmed. The costs will be taxed to Johnson and Kinne, executors.