EVERETT DOUGLASS AND HELEN SAGER v. AMANDA DOUGLASS ET AL.

*Equity—Laches—Statute of limitations—Married women—Parol trust in lands.*

1. It was held in *King v. Merritt*, 67 Mich. 217, that a married woman was relieved from all disability to bring action by the Legislature of 1855, being an act in regard to the rights of married women.

2. The rule that "equity aids the vigilant, and not those who slumber on their rights," is designed to promote diligence on the part of suitors; to discourage laches, by making it a bar to relief; and to prevent the enforcement of stale demands of all kinds, wholly independent of the statutory periods of limitation. 1 Pom. Eq. Jur. § 418.

3. A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. *Smith v. Clay*, 3 Brown, Ch. 639.

4. The purpose of How. Stat. § 6179, providing that no express

trust in lands can rest in parol, is to preclude parties from asserting equitable interests in lands where they must rest upon parol evidence in opposition to the written instruments of title which have been made by their consent and approval.

5. Upon the facts stated in the opinion, it is held that, if complainants ever had any claim of title to the premises in controversy which they could have asserted against the defendants, it is now barred.

Appeal from Livingston. (Newton, J.) Argued June 8, 1888. Decided October 26, 1888.

Bill to set aside deeds and for other relief. Complainant Sager appeals. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Rollin H. Person,* for complainant Helen Sager.

*Luke S. Montague,* for defendants.

LONG, J. The bill of complaint in this cause was filed by complainants to set aside three deeds,—one made by Alanson Douglass and wife to Myron Parker and Hiram Parker, dated November 2, 1857; one made by Myron Parker and Hiram Parker and their wives to Amanda Douglass, dated November 5, 1863; and the other made by Amanda Douglass to Sarah T. Parker, dated November 5, 1863,—conveying 240 acres of land in the township of Iosco, in the county of Livingston, and praying that each of said complainants be decreed an undivided three-tenths of said premises, and for an accounting for the rents and profits of the premises.

The adult defendants, Amanda · Douglass and Mary Parker, filed an answer to the bill, and the infant defendants, Emma Parker and Everett Parker, by guardian *ad litem* filed an answer setting forth the same facts of defense as those set forth in the answer of the adult defendants. Proofs were taken before a commissioner upon the issue in the case, and a hearing had thereon

before said court, and a decree was entered therein dismissing the bill, from which decree the complainant Helen Sager alone appeals.

The complainants are brother and sister, and children of Amanda Douglass, one of the defendants. The bill alleges that their father, Samuel B. Douglass, was the owner in fee, and in the actual possession during his life-time, of the N. E. ¼, and the E. ½ of the N. W. ¼, of section 17, in township 2 N., of range 3 E., in the county of Livingston, State of Michigan, containing 240 acres of land; that for several years Samuel B. Douglass, with his family, lived upon the premises, and made large improvements on the lands; that on the 7th day of June, 1844, Samuel B. Douglass was in embarrassed circumstances, and for the purpose of raising the money to pay off such indebtedness he made a loan of $350 from his brother, Alanson Douglass, and to secure the payment of the same gave his brother a lien upon certain personal property, and also made and delivered to him a quitclaim deed of the lands above described for a consideration therein expressed of $2,000, and which deed was recorded in the office of the register of deeds of Livingston county on January 1, 1845.

It is further alleged that Alanson Douglass at the same time executed and delivered to Samuel B. a contract in writing, wherein it is alleged that said quitclaim deed was given for the purpose of securing the payment of of said loan only, and not as an absolute transfer of the title of said premises to said Alanson Douglass, and agreeing, upon payment to him of said money and the interest and expenses of such conveyance, that he (Alanson) would reconvey said property upon request of Samuel B. to him or to any one he should appoint by assignment, but not otherwise.

That this deed, and agreement executed by Alanson,

were intended by the parties as a mortgage, and not intended to convey, transfer, or pass the title absolutely to said premises to Alanson Douglass; and that no foreclosure or attempt at foreclosure of said deed has ever taken place. It is further alleged that Samuel B. Douglass departed this life intestate at Detroit, on September 11, 1847, leaving surviving him as his heirs at law, Everett Douglass, Robert Douglass, Samuel B. Douglass, Jr., and Helen Douglass, now Helen Sager, and Sarah Douglass, afterwards Sarah Parker, and the defendant Amanda Douglass as his widow.

That since the death of said Samuel B. Douglass, said Samuel B. Douglass, Jr., and Robert Douglass have departed this life, and that the surviving children and the widow took the interest which said deceased children had in the estate of their father.

The bill further alleges that Sarah Douglass intermarried with one Myron Parker, and that on the 14th day of July, 1873, she departed this life intestate, leaving as her sole heirs at law her surviving, Mary Parker, Emma Parker, and Everett Parker, the three defendants named in the bill. And complainants further aver in their bill that soon after the death of their father said complainant Everett Douglass went upon said premises, and occupied and worked them, jointly with his mother, Amanda Douglass, and so continued to occupy and possess the same for several years after his father's death.

That during the year 1854 complainant Everett Douglass and his mother, Amanda Douglass, with the proceeds of said premises, and other means which they had earned and accumulated, paid in full said Alanson Douglass the amount, principal and interest, of the sum so borrowed of him by Samuel B. Douglass, deceased, and to secure payment of which said quitclaim deed was executed as aforesaid by Samuel B. Douglass to Alanson Douglass;

and that Alanson was entirely satisfied with such payment, and willing to execute any proper release or conveyance that would vest the title of said first above described lands and premises in the widow and heirs at law of Samuel B. Douglass, deceased.

That upon the payment of said amount so secured by said quitclaim deed, on or about the 11th of September, 1854, said Alanson Douglass made, executed, and delivered a deed of conveyance of said first described lands and premises to Amanda Douglass, thereby conveying to her all the right, title, interest, claim, and demand which he, the said Alanson, had in and to said premises under and by virtue of said quitclaim deed, or under and by virtue of any title, claim, or demand whatever. And they charge that no consideration was paid by said Amanda for the last-named deed, except to pay the amount, principal and interest, and costs, so secured by said quitclaim deed.

Complainants further aver that they consented at the time to have the said last-named deed so executed by said Alanson to said Amanda for the sole and only purpose of having the title to said lands and premises vested in their said mother, so that she and the said heirs at law of Samuel B. Douglass could secure their rights as such heirs and as the heirs of said Amanda in and to said premises upon the death of their said mother.

That at the time said last-named deed was executed and delivered to said Amanda, it was their intention to permit her undisturbed to possess and occupy said lands and premises for and during her natural life, fully believing that at her death they would each inherit an undivided third thereof. And they aver that they would not now interrupt the peaceable possession of said Amanda to said premises, or commence these proceedings against her to recover and secure their rights thereto, if it were not for

the acts and conduct of said Amanda, and the pretended deeds of conveyance of said premises by her executed, as hereinafter set forth; by means of which acts, conduct, and pretended conveyances said Amanda intended and undertook to cheat and defraud the complainants out of their title, share, and interest in and to said lands as such heirs of said Samuel B. Douglass, and in violation of her understanding and agreement to and with complainants at and before said deed was so executed and delivered to her by said Alanson Douglass.

And they charge that the last-mentioned deed never was recorded, but ever remained in the possession of the said Amanda for a long space of time, to wit, until on or about the 2d of November, 1857, when it was by said Amanda, or under her direction, destroyed, and that immediately thereafter said Amanda caused another deed to be executed and delivered by said Alanson to Myron and Hiram Parker of said premises.

That said Hiram Parker was not related to them or to the said Amanda, but was the brother of said Myron Parker, the husband of Sarah, the daughter of said Amanda, and the father of said minor children, defendants herein.

That no consideration whatever was paid for said last-mentioned deed, and that the same was executed and delivered on some private or secret agreement or understanding between said Amanda and the said Parkers; that said deed from said Alanson was executed and delivered to them upon request of said Amanda, with the agreement and understanding that they, the said Myron and Hiram Parker, would execute and deliver to her a deed of conveyance of said lands and premises, and thereby convey to her all the pretended title, interest, or claim which they or either of them had in said premises; and that, having received such deed from said Alanson, they

refused to execute and deliver to said Amanda their deed, unless she would at the same time and place execute and deliver to said Sarah Parker, the wife of Myron Parker, a deed of conveyance of said premises, thereby conveying to said Sarah all the real and pretended title in and to said premises which she, said Amanda, then had.

It is further alleged that on the 5th of November, 1863, said Myron Parker, and Sarah, his wife, and Hiram Parker, made, executed, and delivered to said Amanda a deed to said premises, and that upon the same day said Amanda made, executed, and delivered her deed to Sarah Parker, thereby conveying to her all her right, title, and interest in and to said premises, thereby vesting the title to said premises in said Sarah Parker; and that by the death of said Sarah Parker the defendants Mary Parker, Emma Parker, and Everett Parker took whatever interest their mother had in said premises, and now claim to be the owners of the same.

That said premises are worth the sum of $14,000 and upwards, and that the share of said complainants each therein then was and still is worth the sum of $4,000 and upwards.

That since the death of said Samuel B. Douglass, said Amanda, as his widow, has lived upon said premises; has ever since his death continued in possession of the same, and used and farmed the same, and had the proceeds thereof, undisturbed by the complainants or any of the heirs at law of Samuel B. Douglass deceased, without requiring any accounting therefor by her and said heirs. And they aver that no accounting by her, or assignment of her dower interest in said lands, ever took place; that since the date of said deed to Sarah, and during her lifetime, sometimes said Amanda has claimed that said real estate belonged to said Sarah, and has, since the death of said Sarah, claimed that said real estate belonged to the

said children and heirs at law of said Sarah. Said Amanda has repeatedly denied—since the death of said Sarah, but never before—that said complainants had any interest whatever in said real estate as heirs at law of Samuel B. Douglass or otherwise. She now claims that the heirs at law of said Sarah are the owners of said premises, and that they became such owners under and by virtue of said deed from Alanson to Myron and Hiram Parker, and from them to said Amanda Douglass, and from said Amanda Douglass to said Sarah Parker, and by inheritance as heirs at law of said Sarah, deceased; and said Amanda utterly denies any title, interest, or right of possession in and to said premises, or any part thereof, to the complainants or either of them.

The complainants aver that they never sold or conveyed or in any way parted with their interest in said real estate; and they charge, as heirs at law of Samuel B. Douglass, Sr., Samuel B. Douglass, Jr., and Robert Douglass, deceased, they are now tenants in common of, in, and to said real estate with said Amanda, and the said Sarah until the death of the latter; and since the death of said Sarah they aver they have been such tenants in common of said premises with said Amanda and the said children and heirs at law of said Sarah.

The bill then prays that said pretended sale and deed from said Alanson Douglass to Myron Parker and Hiram Parker, and said pretended sale and deed from said Myron Parker, Sarah Parker, and Hiram Parker to said Amanda Douglass, and said pretended sale and deed from said Amanda Douglass to said Sarah Parker, all and each of them, may be decreed to be null and void, and the same be held for naught as against the complainants; and that complainants be reinstated in their undivided three-tenths interest, each, in said real estate, as above described, excepting four small pieces in the bill described; and that

the defendants hereto, or such of them as may seem to have appropriated the same, be liable therefor, and may be requested to render an account, and pay over to the complainants, each, his or her share of the rents and profits arising from said lands since the death of said Samuel B. Douglass; and that' Amanda Douglass, Mary Parker, Emma Parker, and Everett Parker, or such of them as may appear to have the apparent legal title or any title thereto, may be decreed by the court to release and convey said lands and premises, or such undivided interest therein, to the complainants as their and each of their interest in said premises may appear; or that said decree may stand in lieu of such release and conveyance, and may be recorded for that purpose.

The answer admits the giving of the deed to Alanson, and the making of the agreement, but it avers it was understood and believed by the parties to be a valid conveyance of the title, and that the agreement was a memorandum contract for a reconveyance of the land, and did not, with the deed, constitute a mortgage, legally required to be foreclosed to pass the title, and was not so intended by the parties.

That Amanda Douglass never saw, knew, or heard of such an agreement until about the year 1872; and denies that on the death of the other children, or at any time, the title to the premises passed to the complainants.

The answer admits the conveyances by Alanson and Amanda to the Parkers, and their record; but avers they were made by authority, and that it was understood by the parties who made them, the entire family and neighbors, that they had authority to convey. It admits that complainants all consented to the deed to Amanda, but denies that there was any agreement or understanding that she should hold possession of the premises during her lifetime, and then that they should descend to the heirs of

Samuel B. Douglass; and avers that, after the deed to her, Amanda never recognized any title of complainants to said premises, and that there was no sufficient consideration for said deed; that it was made to vest the title in her; and it avers the complainants were more than paid for all done by them.

That before the death of Samuel the personal property on the farm had been sold upon execution levy; that at the time of his death he was indebted upon mortgages and other indebtedness in the sum of $4,000; that Amanda worked the premises by consent of Alanson, and by her own efforts and industry raised off said premises enough money to pay up part of the mortgage indebtedness upon the premises in controversy, and also paid Alanson; that on September 11, 1854, $1,000 was paid to Alanson by herself and complainant Everett, she borrowing half of it of Everett, who had obtained it from the sale of lands which came to him by his father, S. B. Douglass, in his life-time; that a deed was made at the same time to Everett by Alanson of the land covered by the McIntosh mortgage, which was assigned to Alanson at the time of the deed to him, which title he had obtained after the death of S. B. Douglass; that it was then the understanding that Amanda became the owner of the premises in controversy, and Everett of the McIntosh lands, which he sold a year or two afterwards, and had the proceeds of.

That Amanda, with full knowledge of the complainants, continued in possession of the premises, claiming to own them under her deed from Alanson, until 1857, when the mortgage held by one Lewis Benedict, on what is called the "Grover Land," but distinct from the land in controversy, was claimed to be insufficient security, and administration was threatened against the estate of S. B. Douglass, deceased, for the purpose of collecting the deficiency upon the mortgage, which was then in process

of foreclosure; that by advice of Judge Whipple, the deed to Amanda, which was not put upon record by accidental omission, was destroyed, or returned to said Alanson by her request, and a deed was then made by Alanson, on November 2, 1857, to Myron and Hiram Parker for a time, until the Benedict matter could be settled up, and a mortgage given back, covering some actual indebtedness to Alanson, for the purpose, as Whipple advised, to avoid an expensive litigation, as she was poor, and unable to litigate with as wealthy a man as Benedict; that this was all understood by the family, including the complainants.

That on the Benedict foreclosure there was a deficiency of $2,344.36, which Amanda finally settled by conveying her dower interest in the Grover lands, 255 acres, to Benedict; the mortgage having never been signed by her.

That, all the claims against the estate having been settled up by her, on the 5th of November, 1863, the Parkers conveyed the premises back to Amanda; and that she of her own free will conveyed the premises to her daughter, Sarah D. Parker, taking back a life-lease of the premises, which was part of the consideration for the deed; the balance being for the purpose of providing for said Sarah D. Parker, she having received nothing from her father's estate or her mother, and the complainants having been well provided for, and having received as much in all as did Sarah.

That the deeds mentioned were recorded soon after their execution, and were public records, which was well known by the family, including the complainants, and the neighbors; that the possession from 1854 to the present has been adverse to the complainants, and that the title of the defendants is perfect and absolute in said premises; that there was no fraud or conspiracy in the making of such conveyances; that the profits of said farm went to pay the debts of S. B. Douglass, deceased, and that

Amanda Douglass has a life-estate in said premises, and the other defendants are owners in fee, and the complainants have no interest in the premises, which has always been claimed by Amanda; that the bill shows that the complainants are not in possession of the premises, and that the bill will not lie if they have an adequate legal remedy.

On the hearing the circuit judge made a decree dismissing the bill, with costs against the complainants, and from this decree Helen Sager alone appeals.

The bill in this cause was filed in May, 1884. The deed from Alanson to Amanda Douglass was made and delivered on the 11th of September, 1854. Nearly thirty years had elapsed from the time of the delivery of this deed before the bill in this cause was filed. The second deed made by Alanson Douglass—the one conveying the premises to Myron Parker and Hiram Parker—was made in November, 1857, about 27 years prior to the filing of the bill of complaint in this cause. During all those years the defendant Amanda Douglass has occupied these premises, and claimed possession thereof under the life-lease made and executed to her by her daughter, Sarah Parker; the title of record standing in Sarah D. Parker, and, since her decease, in her children, Mary Parker, Emma Parker, and Everett Parker, the three other defendants.

The bill avers that the complainants consented to the making of the deed by Alanson to their mother, Amanda Douglass, thereby conveying the absolute title to her of the premises in controversy.

During these years the complainant Helen Sager has lived in the immediate vicinity of the premises, and it appears from the proofs taken that she knew of the execution of the deed from Alanson Douglass to Myron and Hiram Parker, and from them and their wives to Amanda

Douglass, and from Amanda Douglass to Sarah Parker; said deeds being placed upon record immediately after their execution. She was informed, as shown by the proofs taken in the case, of the agreement between her mother and Everett Douglass as to the McIntosh farm, and she was bound to know that the lands which formerly belonged to her father were claimed to be conveyed independent of the statute of descents. With full knowledge of these facts she has rested upon her rights for more than twenty years.

It is claimed, however, by her counsel, that the statute of limitations would not run against Mrs. Sager, from the fact that she was married while an infant, and has always been a married woman since. This question is fully settled by this Court in *King v. Merritt*, 67 Mich. 217. (34 N. W. Rep. 700), in which it was held that a married woman was relieved from all disability to bring action by the Legislature of 1855, being an act in regard to the rights of married women.

"Equity aids the vigilant; not those who slumber on their rights."

This rule is designed to promote diligence on the part of suitors; to discourage laches, by making it a bar to relief; and to prevent the enforcement of stale demands of all kinds, wholly independent of the statutory periods of limitation. 1 Pom. Eq. Jur. § 418. The rule is well stated by Lord Camden in *Smith v. Clay*, 3 Brown, Ch. 639:

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence."

The deed from Alanson Douglass to Amanda, made in 1854, conveyed to her an absolute title in fee to the premises. It was made by consent of all the heirs at law of Samuel B. Douglass. It was in the usual form of quitclaim deeds, without any clause in it, so far as this record shows, limiting the estate of Amanda Douglass in any way, and was not accompanied by any written declaration of trust, or agreement of any character to convey to the heirs at law of Samuel B. Douglass, or to preserve the estate for their use and benefit after her death. The claim is made by the complainants that such an agreement was made; that the estate was to be kept and enjoyed by Amanda during her life-time under the deed of 1854 from Alanson, and that at the death of Amanda it was to pass under the statute of descents to her heirs at law. This agreement rested in parol. No express trust in lands, however, can rest in parol. How. Stat. § 6179.

The purpose of this statute is to preclude parties from asserting equitable interests in lands where they must rest upon parol evidence in opposition to the written instruments of title which have been made by their consent and approval. If the complainants ever had any claim of title to the premises in controversy which they could have asserted against Amanda Douglass, or these infant defendants, it is now barred.

We do not think the proofs made out any claim for relief, and complainants' bill was properly dismissed in the court below.

The decree of the court below is affirmed, with costs to defendant.

The other Justices concurred.