CORBY ʟᴠ. TROMBLEY.

BILL TO SET ASIDE PROBATE OF WILL—LACHES.

Delay by an heir for nearly 20 years after learning of the probate of a will constitutes such laches as will prevent him from maintaining a suit to set aside the will on the ground that the testator was incompetent to make it, and that its allowance was obtained through fraud.

Appeal from Wayne; Hosmer, J.   Submitted June 11, 1896.   Decided July 21, 1896.

Bill by Adelaide Corby against Fillis Trombley and others to set aside the probate of a will.   From a decree dismissing the bill, complainant appeals.   Affirmed.

*Atkinson & Atkinson*, for complainant.

*De Forest Paine*, for defendants.

LONG, C. J.   This bill was filed to set aside the probate of a will, and the order establishing the same, made and entered May 21, 1872, and to declare the will invalid. The will was made by Robert Trombley, who died August 12, 1871, leaving surviving him his widow, Fillis Trombley, and seven children, to wit, Charles Trombley, who resided in the city of Detroit; Robert Trombley, Alexander Trombley, Fillis Pischea, Mary Sophia Poupard, Catherine Beaupray, and the complainant, Adelaide Corby, all residing near together in the town of Grosse Pointe.   The reasons given by the complainant why the will, and the order probating it, should be set aside, are:

1. That at the time of the making of the will the testator was insane, and therefore incompetent to make a valid will.

2. That no legal notice was ever given of the hearing of the petition for the probate of the will.

3. That the widow and Robert and Alexander Trombley entered into a conspiracy for the purpose of keeping all knowledge of the making of the will from the complainant, and of- defrauding her of her interest in the property by having probated a will which the testator was incompetent to make.

4. That, while the will was probated in May, 1872, the complainant had no notice or knowledge that a will had been made by her father until some time in the summer of 1892.

The answer avers the competency of the testator to make a will, admits the making of the will, the making of the order admitting it to probate, avers that proper notice was given for the probating of the will, denies that complainant had no knowledge of the making of the will until the summer of 1892, and avers that complainant had notice and knowledge that the will was in existence soon after it was probated.

The will gave to the widow the whole estate for use during her natural life, and at her decease gave to the sons Robert and Alexander the part of the farm lying north of the River road, in the township of Grosse Pointe, to be equally divided between them. The balance of the farm, all lying south of the River road, was given after the mother's death to all the children, except Charles, to be divided equally among them. To Charles, who was a son by a former marriage, he gave the sum of one dollar. Upon the hearing in the court below a decree was entered dismissing complainant's bill, and complainant appeals.

· The claims made by the complainant are substantially those set up in the bill and insisted upon in the court below. After a careful examination of the record, we have concluded that it is necessary to discuss but one question. While the complainant attempts to excuse her laches by the claim that she had no notice or knowledge of the making of the will until 1892, we are satisfied that this notice came to her many years earlier. The mother tes-

tified that, at the time the will was probated, all the children were present, except the complainant and the son Charles, but that Charles was present upon another occasion while the proceedings were being taken.

It appears that, about two years after the probating of the will, some talk was had between the daughters as to a division or sale of that portion of the farm lying south of the River road, and which had been given to all the children, except Charles. They were unable to agree upon a division, and it was concluded to make a sale of that to a Mr. Moran. The widow, testifying in regard to that transaction, stated:

"I was at Mrs. Corby's house at one time, I remember, and, on arriving at the house, Mr. Charles G. Moran was there, and left. Later on in the evening she sent for Mr. Rae, who came, and she told him that they had talked the thing over, and that Mr. Moran had avised her and told her that Robert Trombley was not capable of making a good will, and it ought to be broken, or it could be broken, and that her husband, Johnny, had told her (Mrs. Corby) that the will was all right, and Mr. Trombley had a right to do what he pleased with his property. * * * That was the last time I had any conversation, at which the contest of that will was spoken of, with Mrs. Corby. She seems to have been passive,—neither was siding with one side of the children, nor the other; passively satisfied with the result.

"Q. When, at any time, did Mrs. Corby ask you to give her her share in the property?

"A. I don't recollect, exactly. It may be one year, or it may be more. But Mrs. Corby asked me, inasmuch as their share was small,—she asked me to consent to sell what was coming to them; that is, south of Jefferson avenue.

"Q. Was that before or after the sale to Mr. Moran?

"A. Before. They could not sell without my consent."

The part of the farm lying south of the River road was sold, and the deed joined in by all the children except Charles, who took no interest under the will.

Robert Trombley also testified that, about two years after the probating of the will, complainant came down

to her mother's house, where he was living, and asked his mother to give her her share in the estate; that at another time she came, and said: "The boys have the use and privilege of theirs. Therefore we ought to be entitled to our share of the place. We could sell it, and buy somewhere else with that money." That that was before the sale to Moran.

While these conversations, as related by Robert and his mother, are contradicted by the complainant, we are satisfied from the surrounding circumstances that she knew within at least two years after the will was probated that it was in existence, and that she was making claim for her share under it. The parties all resided within two or three miles of one another. They were all married, and had families of their own, except the youngest daughter. Robert and Alexander continued to live upon the farm with their mother, made large improvements, and, with the consent of the mother, made a division, each taking one-half. Complainant, during all these years, lived within three miles of them, and as near to the other children. They frequently visited back and forth, and it would be a most remarkable circumstance that in all that time, from 1872 to 1892, she never learned that a will had been made by her father, when in the meantime she had joined in a deed for the sale of that part of the land lying south of the highway, in which she had an interest, according to the will, and had received her share of the proceeds. It is true, as contended by her counsel, that at the time the will was probated she and her family had the smallpox, and were unable to be out for several months, and that no personal service was made upon her; but we cannot avoid the conclusion, from the testimony and the circumstances set forth, that she must have known of the making and the probating of the will at a very early date after the proceedings were had in the probate court. Therefore for nearly 20 years she has rested upon her rights, and at this late day, after many of the witnesses who probably knew the condition

of the testator's mind, and his competency to make a will, have died, now seeks the aid of a court of equity to acquire rights which she should then have asserted. We think, under the circumstances of this case, the complainant has not moved within a reasonable time. The case falls within the rule of *Campau* v. *Van Dyke*, 15 Mich. 371. As was said in that case:

"Sound public policy, and a just regard for the stability of private rights, require that the solemn judgments and decrees of courts, affecting the rights of property, shall not be lightly disturbed, nor, without the strongest reason, allowed to be impeached, after any considerable period of time, during which the parties have been allowed to rely upon them, * * * or the evidence by which they might have been sustained has been lost. * * * We think the only just rule which can be laid down upon this point is that such a bill must be brought within a reasonable time, having reference to the nature and all the circumstances of the particular case. * * * He must show himself prompt and eager for redress, and any delay must be accounted for and excused."

This language may well be applied to the present case, where the complainant, by her bill, charges the procurement of an invalid will for the purpose of defrauding her out of her rights, and where the existence of the will and its probate have been known to her for nearly 20 years.

The court below properly entered a decree dismissing the bill. That decree will be affirmed, with costs.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, J., did not sit.