EAMES *v.* MANLEY.

1. FRAUDULENT CONVEYANCES—ATTACK IN EQUITY—LACHES.
Where it appears from the averments of a bill to set aside conveyances for the alleged fraud of persons since deceased that the complainant, with knowledge of the fraud alleged, remained silent for a great many years without any reasonable excuse, allowing third persons to acquire interests in reliance upon the validity of the transactions complained of, the bill should, on demurrer, be dismissed.

2. SAME—LANDS IN ANOTHER STATE—JURISDICTION.
A court of chancery in one State cannot entertain a bill to set aside for fraud the sale of an intestate's land in another State pursuant to probate proceedings in that State.

3. PROBATE COURTS—JURISDICTION—EXECUTOR'S BOND.
The circuit court in chancery of one of the counties of the State has no jurisdiction to require an executor to file in the probate court of another county a new or more ample bond than that which the probate judge of such county has approved.

Appeal from Kalamazoo; Buck, J. Submitted June 22, 1899. Decided September 19, 1899.

Bill by Lucy C. Eames, individually and as administratrix of the estate of Lovett Eames, deceased, against Charles H. Manley, administrator of the estate of Elijah W. Morgan, deceased, and others, for an accounting, and to set aside certain conveyances as fraudulent. From an order, overruling a demurrer to the bill, defendant Manley appeals. Reversed.

*N. H. Stewart*, for complainant.

*Boudeman & Adams* (*Lawrence & Butterfield*, of counsel), for appellant.

MOORE, J. To the bill in chancery, filed by the complainant in May, 1896, the defendant interposed a demurrer, which was overruled. From the order overruling the demurrer he has appealed.

The bill avers that complainant is the widow and administratrix of Lovett Eames, who died intestate in September, 1863, possessed of a large amount of real estate in Kalamazoo, consisting of a machine shop and water-power valued at $12,000, certain real estate in Van Buren county, and certain patents and personal property, which, added to the real estate, was valued at nearly $50,000, and personal and real property in Jefferson county, N. Y., worth $50,000, and that none of it, except a small amount of household furniture and a horse, ever came into her possession, either as an individual or as administratrix. It avers that, soon after the death of her husband, her brother, then a resident of Ann Arbor, a lawyer, Elijah W. Morgan, came to her home, and advised with her in relation to her husband's estate; that she had the utmost confidence in his ability and honesty; that at his request, and that he might advise her intelligently, she delivered to the said Morgan all the books, papers, and accounts relating to her husband's business and estate, including his correspondence, and has never been able to possess herself or see any of them from then until now, except a very little that was used in litigation in 1887; that her

husband left her with a family of seven children, the oldest of whom was 27 years of age, and the youngest 9 years of age, at the time of the death of her husband, all of whom lived with complainant, except the oldest one, Elisha D. Eames, who was in charge of the manufacturing business of her husband in Jefferson county, N. Y.; that by the advice of said Morgan, upon the petition of her oldest son, complainant was appointed administratrix of her husband's estate; that she then and there constituted said Morgan her trusted and confidential adviser, and placed herself under his direction and dominancy, and, while she was nominally administratrix, she only acted as directed to do by said Morgan, having the most implicit confidence in his intelligence and honesty; that the only attorney employed in relation to the estate was J. Davidson Burns, who was entirely under the direction and command of said Morgan, and that all probate court proceedings in said estate, both in this State and in New York, were managed and carried forward by said Morgan without the advice, or even knowledge, of complainant, who gave herself no concern about the management of the estate.

Complainant avers that frequently after 1865, and before said Morgan became *non compos*, in 1882, she requested said Morgan to account to her for the proceeds of the estate; that he promised to do so, but did not; that he became *non compos* in 1882, and remained so until his death, in 1892; that he died without accounting with the complainant in relation to his dealings with said estate, and it was not until her family had grown to manhood and womanhood that she knew Morgan had mismanaged the estate, and appropriated every dollar of it to his own use. She avers that when her husband died he owed said Morgan $12,000, and to other persons in the neighborhood of $5,000; that said Morgan caused commissioners on claims to be appointed, who allowed certain claims within the life of their commission; that said Morgan caused claims to be allowed in his favor of $40,000, about $12,000

of which was *bona fide* indebtedness, and the balance was fraudulent, which was allowed after July 12, 1864, and after the right of said commissioners to allow claims had expired. Complainant avers that, without her knowledge, said Morgan, in 1863, caused herself and his brother to be appointed administratrix and administrator of said estate by the surrogate court of Jefferson county, N. Y., and caused nearly $12,000 of the claims which had been allowed in Kalamazoo county to be presented for allowance in the surrogate court of Jefferson county, N. Y., which were not allowed, but claims amounting to $3,000 were allowed, which were not *bona fide* claims; that said Morgan then procured an order for the sale of the real estate in Jefferson county to satisfy said claims, one-half of which had been owned by said Eames; that there was a large amount of personal property in Jefferson county and debts due the estate; that said Morgan so manipulated the property as to become the owner of all of it, and cheated the estate out of all of it. The bill avers that, immediately after purchasing said property, Morgan rented it for a large amount of rental, and that other property at Watertown belonging to said estate was rented for large sums, and the rental appropriated to his own use by said Morgan; that he never accounted for this property, and has never returned the books and *memoranda*, and that it became known in 1887 that Morgan had cheated said estate out of every dollar's worth of property it possessed; that he and his representatives have refused to return any of said books, or to allow any person interested adversely to him to inspect them.

The complainant avers that the title to the Jefferson-county property is today in the estate of Lovett Eames and his heirs at law, as well as the proceeds of the business, and that no account has been made by said Morgan in the surrogate court in Jefferson county, N. Y. She avers that in April, 1864, she signed a petition to the probate court of Kalamazoo county to sell the real and personal property in Kalamazoo, which sale was to take

place on May 12th; that the property was advertised for August 16th, and the sale adjourned to September 17th, when it was struck off to said Morgan, and that the proceedings in relation thereto were fraudulent on the part of said Morgan, the bill describing in detail in what the fraud consisted. Complainant avers that in signing the petition, and in all she did thereto, she relied upon said Morgan, and was in ignorance of his methods and what he did, and that the lands in Van Buren county were also fraudulently sold to said Morgan for much less than their value, under the license of sale made in 1864, and that said Morgan so manipulated things as to acquire all the property belonging to said estate; that, while an allowance of dower was made to the complainant, she never got anything except some household and personal property, appraised in the inventory at $359, and that none of the *bona fide* claims against said estate, except those belonging to said Morgan, have ever been paid; that prior to 1885 said Morgan became financially involved, and, in order to cheat and defraud his creditors as well as said estate, conveyed to his wife his personal and real estate, amounting to $300,000, and that one of the pieces so conveyed was the machine shop and water-power in Kalamazoo, which property was first deeded by Lovett Eames to said Morgan in 1859, but that that deed was in fact a mortgage, given to secure a debt due or to become due to said Morgan; that in 1872 said Morgan gave to his wife a mortgage on said property, which was recorded in December, 1872, and in 1874 gave a deed of said property to his wife, which was recorded in 1874; that said Lucy W. S. Morgan afterwards died, and the executors and trustees of her estate, in 1894, brought ejectment against complainant and the heirs at law of Lovett Eames to recover the real estate first mentioned, which case was tried, and resulted in a verdict in favor of defendants, but that said executors still persist in claiming title to said property.

The bill avers that, after said Morgan became *non compos*, he made transfers of real and personal property to

Franklin L. Parker, Lucy D. S. Parker, and Lucy W. S. Morgan, each of them knowing that he was of unsound mind; that Mrs. Morgan died in 1887, leaving a will appointing executors, who came into possession of all the books and papers belonging to the Lovett Eames estate, which Mr. Morgan in his lifetime had, and still have them, and refuse to deliver them to the complainant; that in 1892 said Elijah W. Morgan died intestate, and Charles H. Manley was appointed his administrator, and has demanded from the executors of Mrs. Morgan the papers belonging to the estate of Lovett Eames, who refused to deliver them to him. The bill avers that in December, 1894, the complainant was cited to render a final account in the probate court for Kalamazoo county of her doings as administratrix; that she filed her report, and the probate court confirmed the same, and that she cannot make a correct report without the books and papers already described; that the property belonging to the estate of Lucy Morgan, deceased, amounts to $200,000; that the executors have given a bond of only $50,000, and the bonds are not good, and the trustees of said estate are not acting prudently, and there may not be property sufficient to pay the claim due the estate of Lovett Eames upon an accounting between the two estates; and asks for an injunction and for a new bond. The bill avers that the probate court has refused to require the executors of Mrs. Morgan's estate to give any other bond.

The bill prays, among other things:

"And your oratrix further prays, the premises being considered, that all the proceedings begun, carried forward, and completed, as sales of the administratrix of the estate of Lovett Eames, deceased, in the State of Michigan, and of your oratrix, as the administratrix of the estate of said Lovett Eames, deceased, and Judson P. Morgan, administrator, with your oratrix, of the estate of Lovett Eames, deceased, in the State of New York, be declared null and void and held for naught, and that the title of the property then and there offered for sale in the State of Michigan by your oratrix at said administratrix's sale, and the respec-

tive sales by said administratrix and said administrator in the State of New York, each and every one be held null and void, and that it be decreed that no title whatever to any of the property there offered for sale ever passed out of and from the estate of Lovett Eames, deceased; and that, so far as may be, all the property, both real, personal, and mixed, that was taken possession of by the said E. W. Morgan at each, every, and all of said respective pretended sales by the administratrix and administrator of the estate of Lovett Eames, deceased, both in the State of Michigan and State of New York, shall be transferred back, so far as may be, to your oratrix, as the administratrix of the said estate of Lovett Eames, deceased; and that, so far as the transfer back to your oratrix of any of said property is unable to be made, that the said personal representatives of the said estate of E. W. Morgan, Charles H. Manley, as the administrator of the estate of E. W. Morgan, deceased, Otis C. Johnson, as the surviving and acting executor and trustee of the estate of Lucy W. S. Morgan, deceased, and Lucy D. S. Parker, as the executrix of the estate of Franklin L. Parker, deceased, shall answer in the full value of said property to your oratrix, and be required to account, in dollars and cents, for the full value of the same, together with lawful interest thereon from the date that the same was taken and appropriated, as hereinbefore stated and set forth, by said E. W. Morgan, deceased, and that said defendants be required to return to your oratrix or her solicitors all books, papers, and *data* belonging to or connected with the estate of Lovett Eames, deceased."

Attached to the bill are certain exhibits, which are made part thereof, but which it is not necessary to refer to further.

The demurrer of Mr. Manley assigns, among others, the following reasons for demurrer:

"*Second.* Because it appears by said bill that the said Lucy C. Eames, as administratrix and individually, has for upwards of 30 years been in default herself in not reducing the assets of said estate to her possession."

"*Fourth.* Because it appears by said bill that the said administratrix commenced to ask for an accounting 30 years ago, and that her claims are barred by the statute of limitations.

"*Fifth.* Because said complainant has been guilty of laches in neglecting her supposed rights for many years."

" *Eighth.* Because the parties familiar with the transactions set forth in complainant's bill are dead, as appears by such bill, and complainant has neglected to file this bill until after the real defendants in the causes of action it purports to set forth are no longer alive to explain their relations to facts alleged."

"*Eleventh.* Because the judgment of the surrogate court in the State of New York set forth in said bill is attacked, and because such judgment cannot be revised or annulled by the court.

"*Twelfth.* For the reason that it appears by said bill that the same is exhibited against this defendant for several distinct matters and causes, and that it is so mixed and commingled with alleged causes of action against the said Otis C. Johnson, surviving executor of Lucy W. S. Morgan, deceased, and against Lucy D. S. Parker, executrix of Franklin L. Parker, deceased, and Lucy D. S. Parker individually, that it is impossible for this defendant to determine what parts of the same he ought to make answer unto."

It is difficult to see how the circuit court in chancery of Kalamazoo county could revise or annul the judgment of the surrogate court for Jefferson county, N. Y. The bill does not state who claim to be the owners of the land in Jefferson county. They are not made parties to this bill, and the courts of this State can have no jurisdiction of them if residents of the State of New York, or of the land in New York. Neither can the circuit court of Kalamazoo county, in chancery, decide what the probate court of Washtenaw county shall do about requiring executors or administrators who are administering estates before that court to give new bonds or more ample bonds. For the purposes of this case, those two features of the bill of complaint may be treated as eliminated from the discussion.

The defendant insists the bill cannot be maintained because of the laches of the complainant. This claim is earnestly resisted by the solicitor for the complainant, who cites but one authority in his briefs, and says the case of *Lant* v. *Manley,* 21 C. C. A. 457, 75 Fed. 627, is like

this. We cannot agree with the solicitor in this conten-
tion. In that case, complainant commenced his suit by
attachment against Mr. Morgan, and attached certain
real estate before his death, and obtained judgment in
June, 1893, and filed his bill in aid of his execution. The
court held that such a bill could be maintained.

What standing has complainant to bring a suit to set
aside fraudulent conveyances made by Mr. Morgan? She
has taken no action, either before a court at law or by
presenting her claim in the probate court, to obtain a judg-
ment.

"The rule is universal that it is only judgment credit-
ors who can take action of this character. Not only must
a person become a judgment creditor in order to be in a
position to take proceedings to set aside fraudulent con-
veyances, but this must be followed by the issue of an
execution and a levy of it upon the property said to have
been so fraudulently conveyed." *McKibben* v. *Barton*,
1 Mich. 213; *Krolik* v. *Root*, 63 Mich. 567; *Root* v.
*Potter*, 59 Mich. 498; *Scott* v. *Wayne Circuit Judge*,
62 Mich. 532; *Nugent* v. *Nugent*, 70 Mich. 52. "If it
is sought to reach equitable assets, then not only must
there be a judgment obtained and an execution issued, but
the execution must be returned as uncollectible, in whole
or in part." *Clark* v. *Davis*, Har. Ch. 227; *Tyler* v. *Peatt*,
30 Mich. 63. See Chancery Rule No. 30, and cases in
note.

There had been no such laches in the case of *Lant* v.
*Manley*, *supra*, as here, and such laches as there was the
complainant excused, so that the court thought his excuse
was good. In this case complainant seeks to excuse her
delay by saying she had confidence in her brother; but the
bill avers: "It became known and was demonstrated
about the year 1887 that said Morgan had cheated and de-
frauded the estate of Lovett Eames out of every dollar's
worth of property it possessed." She also says she did not
have the possession of the books and papers necessary to
advise her of the situation. The probate court, upon her
petition, had abundant authority to require the discovery
of any and all books and papers belonging to the estate.

2 How. Stat. § 5876; *Perrin* v. *Calhoun Circuit Judge*,
49 Mich. 342; *Manly* v. *Washtenaw Probate Judge*, 99
Mich. 441. Though, according to her own showing, she
knew all the time where the books and papers were, the
record does not disclose that she appealed to the court for
their production. The bill shows the claim of Mr. Morgan
was allowed in 1864, and complainant knew of its allow-
ance. It also shows that, upon her petition to pay his
claim and others, the real estate in Kalamazoo and Van
Buren counties was sold in 1864. It also shows that the
probate files and records of Kalamazoo county close, so
far as said Morgan's management of said estate is con-
cerned, in June, 1870; that in October, 1872, Mr. Morgan
gave a mortgage to his wife upon the Kalamazoo prop-
erty, which was recorded in December of that year,
and in October, 1874, gave her a deed, which was re-
corded in December. There is not a suggestion that Mrs.
Eames and her children, all of whom had come of age
at this time except the youngest, did not know of these
conveyances. The complainant fails to state in her
bill when she first learned of the fraud she alleges was
practiced upon the estate by Mr. Morgan, but she does
say it was not until her children had grown to manhood
and womanhood. The oldest son was 27 years old when
his father died. The youngest girl became 21 years old
in 1875. This bill was not filed until 21 years later. The
children, heirs at law, remain silent 21 years after the
youngest one has attained her majority; the creditors
who were unpaid also remain silent; and the complainant,
having knowledge of what was actually done all the time,
though disclaiming knowledge of fraud therein for a por-
tion of the time, remains silent a great many years after
she had knowledge of the fraud. It is not until her
brother, his wife, and Mr. Parker, who are said to have
perpetrated the fraud, are all dead, and cannot repel the
attacks made upon them, and whose versions cannot be
given of the various transactions, which have been spread
upon the records of the courts and the registry offices,

this claim of fraud is made. It is difficult to imagine a case where the laches are less excused. If this bill can be entertained now, when the parties who possessed the requisite knowledge to enable the truth to be known about the various transactions have long since died, there can be no safety in acting upon conveyances and records of courts.

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his right and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing." *Smith* v. *Clay*, 3 Brown, Ch. 639; *McLean* v. *Barton*, Har. Ch. 279; *Campau* v. *Chene*, 1 Mich. 400; *Campau* v. *Van Dyke*, 15 Mich. 371; *Russell* v. *Miller*, 26 Mich. 1; *Craig* v. *Bradley*, Id. 353; *McVickar* v. *Filer*, 31 Mich. 304; *Wright* v. *Peet*, 36 Mich. 213; *Hathaway* v. *Village of New Baltimore*, 48 Mich. 251; *Haff* v. *Haff*, 54 Mich. 511; *Bumpus* v. *Bumpus*, 59 Mich. 95; *Township of Sheridan* v. *Frost*, 62 Mich. 136; *Merrill* v. *Wilson*, 66 Mich. 232; *Beal* v. *Congdon*, 75 Mich. 77; *Dailey* v. *King*, 79 Mich. 568; *Edsell* v. *Nevins*, 80 Mich. 146; *Corby* v. *Trombley*, 110 Mich. 292; *Douglass* v. *Douglass*, 72 Mich. 86; 1 Pom. Eq. Jur. §§ 418, 419; 12 Am. & Eng. Enc. Law, 570.

The demurrer should have been sustained. The order overruling it is vacated, and the bill of complaint dismissed.

GRANT, C. J., MONTGOMERY and HOOKER, JJ., concurred. LONG, J., did not sit.