### BUELL v. MENOMINEE RIVER LUMBER CO.

EQUITY—LACHES—TRUSTS.

> Delay of over thirty years in the enforcement of a trust in real property, which, the circumstances tended to show, had been, with the consent or acquiescence of complainant, conveyed by quitclaim deed by the trustee to third parties, bars the attempted enforcement of the trust, on the ground of laches.

Appeal from Dickinson; Stone, J. Submitted June 21, 1910. (Docket No. 116.) Decided September 28, 1910.

Bill by John L. Buell against the Menominee River Lumber Company, the Chicago, Milwaukee & St. Paul Railway Company, and William J. Turner to obtain the appointment of a successor to a deceased trustee, for the cancellation of certain deeds, and for an accounting. From a decree for defendants, complainant appeals. Affirmed.

*A. L. Sawyer*, for complainant.

*E. C. Eastman* (*D. H. Ball*, of counsel), for defendants.

BLAIR, J. The bill of complaint in this suit was filed March 20, 1908, to obtain the appointment of a trustee to succeed a deceased trustee, or to induce the court of chancery to execute the trust, to obtain the cancellation of certain deeds of the real estate constituting the subject-matter of the trust, and for an accounting.

It appears from the evidence, and the court found, that in the summer of 1875 negotiations were entered into by and between complainant and the defendant Menominee River Lumber Company for the laying out and platting of a town site in lands described in the bill of complaint

which then belonged to said defendant.    When these
negotiations were begun, a railroad was being projected
across said lands by the Chicago & Northwestern Rail-
way Company, and it was the desire of the parties to have
a depot established on said proposed town site.    Pursuant
to said negotiations, and in consideration of the trust
agreement, the complainant directed the survey and cut-
ting out of streets for the plat, and in that connection paid
out from $600 to $800 as the expense of the work includ-
ing the survey.    Under date of September 14, 1875, pur-
suant to said negotiations, said defendant Menominee
River Lumber Company, by warranty deed, conveyed
the land in question, consisting of six 40's to Daniel Corry.
and, concurrently with such conveyance, said Daniel
Corry and said lumber company entered into an agree-
ment which, after reciting the deed to Corry of the real
estate in question, contained, among others, the following
provisions:

"And whereas the said lands were deeded to said Daniel
Corry, party of the first part, in trust for the said Menom-
inee River Lumber Company, John L. Buell of Menom-
inee county, Michigan, and the said Daniel Corry as will
hereinafter appear:    Now, therefore, this indenture wit-
nessth: that the said Daniel Corry for and in considera-
tion of the sum of one dollar to him in hand paid, the re-
ceipt whereof is hereby acknowledged, hereby agrees and
binds himself to pay to said Menominee River Lumber
Company, and John L. Buell from the proceeds of sales he
shall make of the above lands or portions of them amounts
as follows:    *First.*  The gross amount of all sales made by
him shall be paid to the Menominee River Lumber Com-
pany till the sum of $300.00 with interest thereon at the
rate of seven per cent. per annum from the date of this
agreement shall be fully paid.    *Second.*  From the moneys
received by him derived from the sale of said lands or any
portions thereof after paying the sum of three hundred
dollars aforesaid, and after paying all taxes and the ex-
penses attendant upon clearing up and grading streets and
alleys and in surveying and platting the same, he shall
pay three-fifths ($\frac{3}{5}$) of the proceeds remaining to the
Menominee River Lumber Company, one-fifth ($\frac{1}{5}$) of the

same to John L. Buell and one-fifth ($\frac{1}{5}$) to himself, the said Daniel Corry, which said one-fifth ($\frac{1}{5}$) each to said Daniel Corry and John L. Buell it is mutually understood and agreed shall be in full for all services rendered by them; payments to be made as fast and as soon as the money derived from such sale is received. And the said Daniel Corry hereby agrees and binds himself to keep a complete record of all sales made by him and of all moneys paid out or expended, which shall at all times be open to the inspection of said Menominee River Lumber Company and John L. Buell; it is mutually understood that the pine timber suitable for lumber now standing on the herein described lands and the minerals (if any there be) on or in or under them shall remain and be in full the property of said Menominee River Lumber Company; and that it shall have the right to enter upon the said lands at any and all times within the period of five years for the purpose of cutting, protecting or removing the said timber and at any or all times for the purpose of prospecting for, mining or moving ore."

The deed and agreement were duly recorded in the office of the register of deeds. The railway company declined to establish a depot on these lands but placed it a half mile west thereof, and, in consequence, the principal object of the parties to the trust agreement failed and the lands became substantially valueless for purposes of sale. Corry, the trustee, made no sales, and on April 9, 1877, he made the following agreement with complainant:

"Know all men by these presents, that I, Daniel Corry, of Cedarville, State of Michigan, do hereby agree with John L. Buell of Menominee, State of Michigan, that I will recognize and affirm all sales and contracts that said John L. Buell may enter into with any person or persons by sales or contracts of any and all lots in the town of Sturgeon, meaning the village site of Sturgeon now platted, but not recorded and situated upon the north half of N. W. $\frac{1}{4}$ section 14, township 39 N. of range 29 W. Menominee county, Michigan. Provided that no sale or contract shall be made with any person or persons for the sale of more than two lots to any one party or parties. This contract shall remain in full force and effect for the term of one year and shall terminate on the 9th day of April, A. D. 1878."

Complainant made no effort to sell lots under this agreement, probably because he knew that such effort would be unavailing, and on July 18, 1879, Corry and wife executed a quitclaim deed of the lands to the defendant lumber company, which were thenceforth treated, used, and disposed of by such company as its individual property. This deed was duly recorded December 17, 1879, but complainant testified that he had no knowledge of it prior to 1907, and during all of that time considered that he was the owner of the interest acquired under the trust deed. The entire conduct of complainant and the surrounding circumstances are inconsistent with his testimony. He was a very intelligent man, living within six or seven miles of the land, experienced in, and familiar with, real estate transactions, and dictated the trust agreement himself. He was engaged in selling real estate, exploring for and exploiting mines, and in other money-making projects, and may reasonably be presumed to have had the usual regard of men for their own property interests. The fact that he made no inquiries with reference to these lands and apparently took no further interest in them after the expiration of his power of attorney until years after the death of Corry, which occurred January 5, 1893, satisfies us that he either knew of the quitclaim deed and acquiesced therein or considered his interest of no value and abandoned it. His testimony that he did not know of the deed, but supposed for over 30 years that he had a valid, subsisting interest, is overcome, in our opinion, by the circumstances of the case as we find them to be established by the testimony.

The complainant was, as held by the lower court, guilty of such laches as to bar his suit.

The decree is affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.