### SPRAGUE v. TRUSTEES OF PROTESTANT EPISCOPAL CHURCH OF THE DIOCESE OF MICHIGAN.

1. TRUSTS—VALIDITY—RESULTING TRUSTS.

   Under a will conveying property in trust to a church association which bequest complainants, heirs at law of the deceased donor, claimed was invalid, the trustees, from the time of taking possession under the terms of the will, held title by virtue of a resulting trust, if the claim of invalidity was established, in favor of the heirs or devisees of the testator.

2. SAME—LACHES—DELAY—EXPRESSED TRUST—JUDGMENT—WILLS.

   After a delay of some thirty-four years, the heirs or representatives of the deceased testator were not entitled to object to the validity of a trust instrument made by him in his lifetime, conveying certain property in trust for religious purposes, and the resulting trust which, if the will was invalid, was created by equitable considerations in their favor, would not be enforced and the possession of the trustees disturbed by the court in chancery, especially after the will had been admitted to probate by a decree of the probate court, an appeal taken and the decree affirmed in the circuit court, and no further steps taken to review the order determining the validity of the trust.

Appeal from Oakland; Smith, J. Submitted April 21, 1915. (Docket No. 73.) Decided June 7, 1915.

Bill by Silas H. Sprague and others against the trustees of the Protestant Episcopal church of the diocese of Michigan for an accounting and to construe a will. From a decree for defendants, complainants appeal. Affirmed.

*Frank L. Doty* and *Glenn C. Gillespie,* for complainants.

*Miller, Smith, Canfield, Paddock & Perry,* for defendants.

The complainants herein, 25 in number, are all heirs at law and next of kin of one Leonard Sprague, who died in the year 1880 leaving a last will and testament by the terms of which he devised to the Church Association of Michigan the residue of his estate in trust for certain charitable uses. Some seven individuals, likewise heirs at law of the said Leonard Sprague, are made defendants, as well as the trustees of the Protestant Episcopal church of the diocese of Michigan. We understand the said trustees to be successors to the Church Association of Michigan designated in the will. The bill sets out that the trustee named in the will qualified as such and entered upon its duty in the administration of said trust; that said trustee has ceased to exist, and the fund is now in the possession of the defendants trustees for the Protestant Episcopal church for the diocese of Michigan. It is further averred that said trustees now have in their possession a balance of $5,376.68, and that they are pretending and assuming to act under and by virtue of said trust contained in said last will and testament. It is further charged that said trust has not been administered in accordance with the provisions of said will, and further that the said trustees have failed to file any statement of account of their doings in relation to said trust in the probate court for the proper county, until within the last year (1913). It is next alleged by the complainants that by reason of such neglect and failure on the part of the trustees to file an annual account, as required by law, complainants were unable to inform themselves of their rights in the premises. It is further averred that the trust created by said will is invalid, and, finally, that complainants have frequently applied to the said trustees to account to them for said trust fund and property and for the profits

and income therefrom, which the defendant trustees have always refused to do. Complainants pray:

"This court will construe the will and codicil of said Leonard Sprague and advise and direct your orators and oratrixes in the premises.

"Your orators and oratrixes further pray that the trust created by the thirteenth paragraph of the last will and testament, and the codicil thereto, of said Leonard Sprague, deceased, may be decreed to be invalid, and that the residue of said estate in the hands of said trustees may be distributed by this honorable court among the heirs at law of said deceased, according to their respective rights and interests.

"That said defendants, 'The Trustees of the Protestant Episcopal Church of the Diocese of Michigan,' may be decreed to pay to this honorable court all the property, both real and personal, and all the rents, profits, and income therefrom received by it as trustees, and may be decreed to make good any and all loss to said estate by reason of its acts done while assuming to act to the provisions and terms of said trust.

"That your orators and oratrixes may have such other and further relief in the premises as the merits of this case require and shall seem equitable and just to this honorable court. And your orators and oratrixes will ever pray," etc.

To this bill of complaint defendant trustees interposed a demurrer in the following language:

"Because it appears from the bill of complaint in this cause that any rights which may have accrued to these complainants or to their ancestors, through whom they claim, in the property described in the bill of complaint, accrued, if at all, upon the death of Leonard Sprague in the year 1880, and have long since become stale by reason of the unexplained and unexcused failure and neglect of said complainants and their said ancestors to claim or assert any such supposed rights until the year 1913.

"Because it appears from said bill that these complainants and their ancestors, through whom they claim, have been guilty of gross laches in neglecting

to assert their supposed rights for upwards of 33 years since such supposed rights accrued.

"Because it appears from said bill that these complainants and their ancestors, through whom they claim, have long since become barred and cut off, under the statutes of limitations of this State, from asserting any supposed rights they or their said ancestors may formerly have had in and to the property described in said bill.

"Because it appears from said bill that the probate records for the county of Oakland disclose that the trust property mentioned in the will of said Leonard Sprague, deceased, was turned over to the Church Association of Michigan, the trustee named in said will, soon after the death of said Leonard Sprague in 1880, and that such trust property has been handled and administered continuously since the date by said trustee and by this defendant, as its successor in said trust, and that during a period of upward of 30 years these complainants and their ancestors, through whom they claim, have never, as appears from said bill, made demand upon said probate court to order said trustee or this defendant to make a report of its administration of such trust until the year 1913, whereby any supposed rights these complainants may once have had in said property have long since been lost, and said complainants are estopped from now asserting any such rights, by reason of their acquiescence and the acquiescence of their said ancestors in allowing such trustee and this defendant to administer said trust during such period of 30 years.

"Because it appears in said bill that some of the complainants claim an interest in the property described in the bill, as heirs of certain beneficiaries and legatees named in said will of Leonard Sprague, deceased, and that such beneficiaries and legatees accepted the bequests therein made by them and thereby confirmed such will, whereby said complainants, as their heirs and claiming through them, are estopped from attacking said will.

"Because it appears from said bill that the probate court for the county of Oakland construed the said will of Leonard Sprague, deceased, in administering said estate and assigning the residue to the trustee named in said will, and that the matter of the con-

struction of said will is *res judicata* as to these complainants and their ancestors under whom they claim, and the judgment of the probate court as to such will cannot be revised or annulled by this court in this proceeding.

"Because the complainants have not in and by their bill made or stated such a case as entitles them in a court of equity to any discovery or relief from or against this defendant, touching the matters contained in the said bill, or any such matters."

The demurrer having been sustained, complainants have removed the case to this court for review.

BROOKE, C. J. (*after stating the facts*). In considering the question here presented, it is, we think, unnecessary to determine whether the trust created by the will of Leonard Sprague is valid or invalid. If valid, the complainants have no standing in court; if invalid, it would seem to be elementary that, from the moment the trustee qualified as such and took possession of the property under the terms of the will by which a certain trust was sought to be created, the trustee held the same under a resulting trust in favor of the testator's heirs, among whom stand complainants and their ancestors. This proposition is supported by the following authorities: *Lyford* v. *City of Laconia*, 75 N. H. 220 (72 Atl. 1085, 22 L. R. A. [N. S.] 1062, 139 Am. St. Rep. 680) ; *Attorney General* v. *Craven*, 21 Beav. 392; 39 Cyc. p. 111, and cases cited in note 51; and 15 Am. & Eng. Enc. Law, p. 1129, and cases cited.

Counsel for complainants, while admitting the force of the decisions cited upon this point on behalf of defendant, claim that they are not applicable for the reason that "there is and has been no adverse possession on the part of the defendant," and, further:

"There has never been any repudiation of the trust

by the defendant, and therefore nothing by which the statute of limitations would commence to run. The defendant could never acquire a personal interest in the property so long as it claimed to hold it in its present trust capacity, and no one except the complainants have been injured by their failure to enforce their rights before this time."

It would seem that the averment, in paragraph 12 of complainant's bill, to the effect that complainants have frequently applied to said trustees to account to them for said trust fund, and that said trustees have always refused, and still refuse, to account to said complainants for the property so held as aforesaid, is a sufficient negation of the assertion that the defendant trustees do not hold said property adversely to said complainants. It is, of course, true that the defendant trustees claim no personal and beneficial interest in said fund. They do, however, claim that they and their predecessor in title have always held said fund under the terms of the will creating said trust, which is clearly contrary to the recognition of any rights of complainants in said fund. There can be no doubt that for upwards of 30 years the present trustees of said fund and their predecessor, assuming the validity of the trust creating the fund, have administered the same and disposed of the income arising therefrom under the terms of the trust. Whether this has been done in exact accordance with the conditions and limitations contained in the instrument creating the trust is, in our opinion, of no particular consequence in this proceeding. The complainants must rest their right to relief upon the invalidity of the trust itself, and not upon its improper execution by the trustees named.

In our opinion, therefore, the sole question presented is whether by lapse of time and acquiescence in the solemn decree of a court of record by complain-

ants and their ancestors they should be held to be estopped from now questioning its validity. The record disclosed the fact that the will in question was admitted to probate in 1880; that on October 18, 1880, four of the then heirs at law gave notice of an appeal from the decision of the probate court; that this appeal was allowed and perfected and filed in the circuit court; that on January 26, 1881, said appeal was heard in the circuit court and the will and codicil were again allowed and certified back to the probate court for execution; and that soon thereafter the trustee named in the will took possession of the trust fund. No appeal was taken from the judgment rendered in that case. We therefore have to consider a situation in which a judgment of a court of record now upwards of 34 years old is brought into question. Counsel for complainants cite several cases from foreign jurisdictions, among them the following: *Tincher* v. *Arnold,* 147 Fed. 665 (77 C. C. A. 649, 7 L. R. A. [N. S.] 471, 8 Am. & Eng. Ann. Cas. 917) ; *Giraud* v. *Giraud,* 58 How. Prac. (N. Y.) 175; *Cooksey* v. *Bryan,* 2 App. Cas. (D. C.) 557; *Craig* v. *Beatty,* 11 S. C. 375; and 15 Am. & Eng. Enc. Law, p. 1207.

Defendant trustees cite and rely upon the case of *Speidel* v. *Henrici,* 120 U. S. 377, 7 Sup. Ct. 610, where the court said:

"The constant avowal of the trustees that they held the trust fund upon such a trust is wholly inconsistent with and adverse to the claim of the plaintiff that they held the fund in trust for the benefit of the same persons as individuals, though withdrawn from the community, living by themselves, and taking no part in its work. * * * If he ever had any rights, he could not assert them after such a delay; not on the ground of an express and lawful trust, because the express trust stated in the bill, and constantly avowed by the trustees during this long period, was wholly

inconsistent with any trust which would sustain his claim; not on the ground that the express trust stated in the bill was unlawful and void, and therefore the trustees held the trust fund for the benefit of all the contributors in proportion to the amounts of their contributions, because that would be an implied or resulting trust, and barred by lapse of time."

While there may be some lack of harmony in the decisions from other jurisdictions, we are satisfied that the question in issue is determined against the contention of the complainants by our own decisions. In the early case of *Campau* v. *Van Dyke,* 15 Mich. 371, a bill was filed to set aside a decree after a delay of only 6½ years. The court there said:

"But sound public policy and a just regard for the stability of private rights require that the solemn judgments and decrees of courts affecting the rights of property shall not be lightly disturbed, nor, without the strongest reason, allowed to be impeached after any considerable period of time, during which the parties have been allowed to rely upon them, and others may have obtained interests on the faith of them, or the evidence by which they might have been sustained has been lost. And if a party to such judgment or decree might, after any considerable period, impeach its validity without showing a proper excuse or reasonable justification for the delay; and especially when it appears probable that material evidence to sustain it may, in the meantime, have been lost, a general feeling of insecurity and distrust, very injurious to property and business, must naturally result.

"For these reasons, we think, in a case like the present, a party seeking to set aside the decree must satisfy the court that he has not slept upon his rights, and that his delay for any period after he was aware of his rights, and competent to prosecute them, has not operated to the prejudice of the other parties, nor deprived them of any of the evidence or other means for sustaining the decree, which they might have possessed had he brought his bill at as early a period as he might. In other words, we think the only just

186 Mich.—36.

rule which can be laid down upon this point is that such a bill must be brought within a reasonable time; having reference to the nature and all the circumstances of the particular case."

The language in this case was cited with approval in the case of *Corby* v. *Trombley*, 110 Mich. 292 (68 N. W. 139), where the delay by an heir for nearly 20 years after learning of the probate of a will was held to constitute such laches as to prevent him from maintaining a suit to set aside the will on the ground that the testator was not competent to make it and that *its allowance was obtained through fraud.*

In the case of *Harlow* v. *Iron Co.*, 41 Mich. 583 (2 N. W. 913), a bill for an accounting and division of profits, sale of premises, and distribution of proceeds, filed less than 30 years after the occurrence of the facts upon which relief was demanded, was dismissed; the court saying:

"The cause is distinctly subject to the principle which, according to previous decisions of the court, disentitles the party to the aid of equity. There has been unconscionable delay."

In *Birdsall* v. *Johnson*, 44 Mich. 134 (6 N. W. 226), an unexplained delay of 24 years in asserting a claim was held to be fatal; the court saying:

"We are also of opinion that the long and unexplained delay and acquiescence of Birdsall would cut off any equities if he had them, and that he has neither a legal nor an equitable claim to relief."

*Compo* v. *Iron Co.*, 50 Mich. 578 (16 N. W. 295). In this case complainant acquired his assignment 30 years after the right of Marji Gesick accrued and 15 years after it had been distinctly repudiated. The court said:

"There is not in our reports a case in which so stale a claim has been recognized, and there are sev-

eral in which a less serious lapse of time has been held fatal."

In the case of *Douglass* v. *Douglass,* 72 Mich. 86 (40 N. W. 177), the bill was filed to set aside deeds made 30 years before. The bill was dismissed, the court quoting the language of Lord Camden in *Smith* v. *Clay,* 3 Brown, Ch. 639:

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence."

In the case of *Buell* v. *Lumber Co.,* 163 Mich. 102 (127 N. W. 767), we held that a delay of over 30 years in the enforcement of a trust in real property was sufficient to bar the complainant from the relief on the ground of laches.

As was said in the case of *Columbian University* v. *Taylor,* 25 App. Cas. (D. C.) 124, where the court had under consideration the validity of a testamentary trust created 20 years before the filing of the bill, we think it may be said here:

"If the invalidity of the devise were apparent upon its face, the objection on the ground of laches in bringing the suit would be fatal."

Assuming therefore the invalidity of the trust (which we do not determine), it is plain that the trustees named in the will, upon taking possession of the property, held it under a resulting trust for the benefit of the heirs of the testator. This fact gave to complainants and their ancestors the right at that time to demand from the trustees named an accounting and the surrender of the fund. Instead of doing this, they acquiesced for upwards of 30 years in the decree of a court of record affirming the validity of the in-

strument creating the trust. By so doing they must be held to be estopped by laches from now questioning the righteousness of that decree.

The decree dismissing the bill is affirmed.

McALVAY, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.