## EAMES et al. v. MANLY et al.

(Circuit Court of Appeals, Sixth Circuit. August 15, 1902.)

### No. 1,012.

1. ADMINISTRATRIX—SALE OF PROPERTY—SETTING ASIDE—LACHES.

 A bill to set aside a sale of property of an intestate's estate on the ground that the creditor who bought it, being the legal adviser and confidential friend of the administratrix, who was his sister, fraudulently obtained possession of the intestate's books of account, and, by abusing the confidence of the administratrix, procured the allowance to himself

¶ 1. See Executors and Administrators, vol. 22, Cent. Dig. § 1553.

of claims greatly exceeding what was due him, will be dismissed for laches, not having been brought till 12 years after discovery of the fraud, and when such creditor was dead.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

This is a bill by some of the heirs at law and creditors of the estate of Lovett Eames to set aside sales of property belonging to the estate for the satisfaction of certain alleged fraudulent claims against the deceased. The bill is ʼone of prodigious length, covering 62 pages of the printed record. Lovett Eames died intestate, in Kalamazoo, Mich., in September, 1863, leaving an estate, real and personal, which the bill avers was of the value of about $50,000. The defendant Mrs. Lucy C. Eames, mother of the complainants, and ·widow of the intestate, qualified as administratrix. The deceased left surviving him six children, two of whom are the sole complainants. The bill, in substance, avers that one Elijah W. Morgan, brother of the administratrix, preferred claims against the estate aggregating about $40,000, and that only about $11,000 of this sum was justly due and owing; that to enforce payment of the claims so preferred and allowed the said Morgan had caused to be sold various parcels of realty situated within the state of Michigan, as well as certain valuable patent rights and other articles of personal property, and had purchased same at prices much below their value. It is then, in substance, averred that said Elijah W. Morgan had subsequently conveyed the property so acquired to his wife, Lucy W. S. Morgan, and to Franklin L. Parker, part to one and part to the other, for the fraudulent purpose of defeating his creditors and the heirs and creditors of said Lovett Eames. It is averred that E. W. Morgan was the legal and confidential adviser of his sister the administratrix of the Eames estate; that before the burial of said Eames he visited his sister, and obtained from her all of the business books, letters, and papers of the deceased, and carried them away, and has ever since concealed same from the administratrix and all others interested in the Eames estate. Complainants charge that the object in securing the business papers of said Lovett Eames was to better enable him to cheat and defraud the estate by preferring expanded claims and securing fraudulent judgments. It is also averred that the wife of E. W. Morgan, Mrs. Lucy Morgan, and Franklin Parker, both of whom ultimately obtained some of the property of the Eames estate through the Morgan judgments and mortgages, were conspirators with E. W. Morgan in the scheme to cheat and defraud the Eames estate. It is averred that Mrs. Eames placed entire confidence in her brother, E. W. Morgan, and intrusted him with the entire management of the administration, and that Morgan took advantage of this relation of trust and confidence to secure an allowance of claims aggregating about $40,000, where his just claim was little more than $11,000. The statement as to how Morgan managed to perpetrate his frauds against the estate of Lovett Eames is somewhat vague. It does, however, appear that he presented certain claims at a hearing before the commissioners appointed under the Michigan procedure in such cases, and that the commissioner allowed claims aggregating $11,639.62. This allowance was equivalent to a judgment, and was of July 12, 1864. At the same date other claims were allowed to other persons aggregating over $10,000. The bill alleges that these claims so allowed other persons were valid and just claims. One of them so allowed was in favor of the principal complainant herein, Elisha W. Eames, and was for $2,800. Two others were for small sums, aggregating $200, and are now claimed to be due to the other complainant, Wilfred Eames, and furnish him his only status as a creditor. The claims thus allowed and now held by the two complainants are averred to be wholly due and unpaid. The only averment in respect to the fraudulent character of the claim allowed Elijah W. Morgan for $11,639.62 is that "a large amount of which claim was fraudulent and false." The only specification affecting it is that "the claim was made out in the handwriting of Lucy W. S. Morgan, one of the said conspirators heretofore mentioned, that one of the items in said fraudulent claim was certain notes to one D. A. Mc-

Nair for the amount of $6,500, but that in truth and in fact the amount due on said notes was only $3,250." Why this was so is not stated. It is then charged that thereafter, on the 18th day of July, 1864,—six days after the filing of the former claim, and six days after the time had elapsed for filing claims, and without any extension of time having been granted for filing claims,—said Morgan filed "a false and fraudulent bill of some $28,000 against the estate," and same was allowed. Concerning this claim it is charged, in substance, that it consisted in part of items of money which had previously been charged and settled by notes included in the former claim of July 12, 1864, and was also expanded by duplicating accounts, charging same sums under different heads; that "drafts were charged one day, and when money was remitted to bank to meet the draft the same amount would be charged again"; that interest was charged contrary to an agreement that it should not be charged; "that the entire bill of $28,000 was not only barred by expiration of time limit, but it was wholly a fraudulent claim, made up and concocted by Morgan and wife." It is then averred "that all of said accounts presented by said Elijah W. Morgan, except something over $11,000, secured by mortgages as aforesaid, were wholly unsupported by any proof, and were passed upon and allowed on the unsupported statements of said Morgan. That in presenting the same for allowance he was acting as the attorney and confidential adviser for and in the place of said administratrix, he as such having the charge of the whole of the affairs of said estate."

From the elaborate and somewhat vague averments of the bill we gather that Morgan held a mortgage, which included much, if not all, of the realty of the Eames estate in Michigan, and that same was given to secure the honest liability of about $11,000 due to him. It also appears, though dimly, that Eames and wife, as far back as 1859, joined in conveying, by deed, a certain property known in the record as the 'Kalamazoo Machine Shop Property,' to said E. W. Morgan. It is averred that in fact this deed was a mortgage, and that a defeasance was executed by Morgan, of which complainants say they are ready to produce a duplicate copy, though oddly enough they failed to file same with their bill. It appears that in due course Mrs. Eames filed her petition in the probate court of Kalamazoo county, Mich., and obtained leave to sell both the real and personal property of the estate, including the Kalamazoo shop property. In accordance with the authority so obtained, she did, in August and September, 1864, expose to sale and sell certain parcels of land in Van Buren county, Mich., and the said shop property at Kalamazoo, and that all of same was bid off by said Morgan. The proceedings under which sales were made, the report of sale and confirmation are averred to have been made "in due form of law, and according to the statutes of the state of Michigan." In accordance with the direction of the court and the sale made by her, as aforesaid, Mrs. Eames, as administratrix, is said to have made her deed to said Morgan conveying to him the right, title, and interest of the Eames estate in the said shop property, which deed bears date December 24, 1864. The price paid for same was $8,100, a credit for that being placed on the mortgage which Morgan claimed to have thereon. The shop property was subsequently conveyed by Morgan to his wife, who is charged with knowledge of the fraud practiced upon the estate, and with active participation in the fraud. For the purposes now in view we need not follow the other parcels of property, for, if the defense of laches applies to the case we have stated, it will apply to the relief sought in respect of every other detail of the case. The defendants to the bill are Mrs. Lucy C. Eames, administratrix of Lovett Eames, C. H. Manley, administrator of E. W. Morgan, O. C. Johnson, executor of Mrs. Lucy W. S. Morgan, and Mrs. Lucy D. S. Parker, individually and as executrix of Franklin Parker. The court below sustained a demurrer for laches, and dismissed the bill, without passing upon other grounds of demurrer. From this decree the complainants have appealed.

Claude S. Carney, for appellants.

Dallas Boudeman (Bowen, Douglas & Whiting, of counsel), for appellees.

Before LURTON and DAY, Circuit Judges, and SWAN, District Judge.

LURTON, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The theory of the bill is that E. W. Morgan fraudulently possessed himself of the books, letters, and papers of the deceased, Lovett Eames, and thus deprived the administratrix of the means to resist or defend against his claims; and that he obtained possession of these books, letters, and papers as the legal adviser and confidential agent of his sister, who was the representative of the estate; and abused her confidence by procuring in his own favor the allowance of claims for an amount greatly larger than the sums justly due him. The further idea of the draftsman of the bill seems to be that as heirs and creditors they had and have some kind of a lien upon the property of the estate which was acquired by E. W. Morgan in satisfaction of his fraudulent claims, and have a right to recover said property from said Morgan and those to whom he conveyed it with notice of his fraud, and to hold the estate of said Morgan and his co-conspirators liable for the value of all moneys and properties which came into the possession of either of them which properly constituted assets of the Eames estate. They specifically seek to have the deed made in 1859 by Lovett Eames and his wife to said Morgan for the machine shop and homestead held to be only a mortgage, and to have a full accounting with said Morgan.

Assuming, as we must, for the purposes of this case, the truth of the averments of the bill, it is very clear that no case of an express trust such as arises out of contract is charged. However false the claims may have been which were preferred by Morgan against the Eames estate, and however iniquitous his conduct in concealing the letters, papers, and books of the deceased from the administratrix or heirs or creditors of the deceased, it is very clear that in presenting claims against the estate for himself he was acting adversely to the estate, and in his own interest. It is also evident that in acquiring property of the estate at a sale held to satisfy his claims, whether his claims were secured by mortgages or not, he was acting adversely to the estate, and acquiring whatever he did acquire for himself, and not for the estate. The trust relation, if any, here was or is in respect to the property of the estate acquired by him under the sales attacked, was one imposed upon his conscience by operation of legal principles, and was not one of that class of trusts called express. Hughes v. Brown, 88 Tenn. 578, 589, 13 S. W. 286, 8 L. R. A. 480. Time, therefore, runs against such a trust, for the open attitude of the persons against whom the trust is implied is adverse to those defrauded. In view of the allegations of the bill that Morgan was the legal and confidential adviser of his sister as administratrix, and that she throughout submitted her entire conduct to his advice, and that she had no knowledge of any defense to his claims, and that both she and the complainants believed his repeated assurances of the correctness and justice of his claims, it may be conceded that until the discovery of the fraud so practiced by him mere lapse of time would not defeat an application to a court of

equity to bring him to an account, and compel a disgorgement of the gains so fraudulently acquired.

These claims were allowed by the local tribunal in 1864. This bill was not filed until 36 years had elapsed. In the meantime all of the persons whose conduct is impeached have long since died. Why this delay? The propriety of examining such papers and books in reference to any claims, especially one so large as that presented by E. W. Morgan, could not but have occurred to the administratrix and to the complainants as creditors and distributees. When did they learn that E. W. Morgan had possession of these papers? The inference from the rather vague averments of the bill is that this was known from the beginning, and that no one questioned his custody. Certainly there is no averment of a recent discovery that these papers were in his custody, or of any effort to obtain them prior to the insanity of said Morgan in 1885. The bill admits the discovery of the alleged fraudulent character of the claims allowed Morgan in 1889, and that two years before that "they began to suspect the fraud set forth in the bill." This distinction between the suspicion of the fraud and its actual discovery two years later is important. Twelve years after the discovery that the claims of E. W. Morgan against the estate had been fraudulently inflated from $11,000 to $40,000, the complainants file this bill to bring him to account for the fraud thus perpetrated, and to recover the property of the estate which had been acquired by him in satisfaction of his fraudulent claims. Assuming that a right of action under such circumstances exists in favor of creditors and heirs, and that they may sue without showing the complicity of the personal representative of the estate, or her refusal to bring the suit, how long may such creditors and heirs or distributees wait before instituting a proceeding after discovering the fraud? There is a vague effort to explain the delay in bringing the present suit by indefinite reference to certain former proceedings in various courts between 1890 and the filing of the present suit, having as an object the recovery of the books, letters, and business papers of Lovett Eames from the guardian or administrator of E. W. Morgan. If those books, papers, and letters were essential to a discovery of the truth of the case against E. W. Morgan or his estate, and the evidence afforded by them was competent in a suit between his estate and that of Lovett Eames, or those representing it, nothing was easier than to have obtained their production. In Eames v. Manley, 121 Mich. 308, 80 N. W. 15, which is one of the proceedings referred to by the bill of complainants as instituted against the E. W. Morgan estate prior to the present suit, the suit was by Mrs. Lucy C. Eames, as administratrix of Lovett Eames, to set aside for fraud the sales of the Lovett Eames lands, etc. The bill was demurred to for laches. One of the excuses for the delay was that "she did not have the possession of the books and papers necessary to advise her of the situation." To this the supreme court of Michigan replied: "The probate court, upon her petition, had abundant authority to require the discovery of any and all books and papers belonging to the estate." 2 How. Ann. St. § 5876; Perrin v. Calhoun Probate Judge, 49 Mich. 342, 13 N. W. 767; Manly v. Washtenaw Probate Judge, 99 Mich. 441, 58 N. W. 367. Aside from the power of

the probate court to compel the production of papers and books belonging to the estate upon proper application, the power of a court of equity to compel the production of such papers in aid of a discovery cannot be questioned. The judicial and semijudicial proceedings referred to do not show any proper diligence in the pursuit of the rights of these complainants,—rights which must have existed just as effectually 12 years ago as upon the day they filed this bill. They have waited until every one of the parties capable of explaining the transaction attacked has died. There is no security that the truth of the matter can now be satisfactorily discovered. On their own showing complainants have made no discovery in relation to the inflated character of the Morgan claims since the suit of 1889, when it was shown by evidence then filed that there had been some stuffing of his claims. The evidence then discovered has all this time been open to them, as well as the undoubted right to compel the production of the books and papers belonging to the estate of Lovett Eames. So far as the bill seeks to have the deed of 1859 by Lovett Eames and wife to E. W. Morgan for the machine shop property declared a mortgage, it is defective in many particulars. It does not appear that its true character as a mortgage has ever been disputed. On the contrary, we infer from the rather indefinite averment of the bill that E. W. Morgan enforced it as a mortgage, and that the interest of the estate, subject to his claim as a mortgagee thereunder, was regularly sold by the administratrix under the power granted her by the Kalamazoo probate court. However this may be, the bill shows that the complainants knew of the defeasance when or about the time the property was sold, and acquired by E. W. Morgan, and that they have ever since had a copy of the defeasance in their possession. The demand is a remarkably stale one, and no reasonable excuse is shown for the long delay in bringing this suit. The opinion of this court in Lant v. Manley, 21 C. C. A. 457, 75 Fed. 627, affords no excuse for the delay of this proceeding. Lant was a judgment creditor, and had levied on property of E. W. Morgan during the life of the latter. The bill was to reach property fraudulently conveyed, in aid of his execution. His efforts to discover the fraud were shown to have been constant, and his bill filed so soon as the discovery was made.

Assuming that complainants have been guilty of no fault or negligence in coming to the knowledge of the alleged fraud practiced upon the estate of their father, they fail to show any such diligence since their alleged discovery as is due under such circumstances. We say nothing of the failure to make averments in respect to the diligence of the administratrix in coming to a knowledge of the fraud, or of the privity which must exist between her and the complainants. We put our judgment upon the fact that the complainants came to the knowledge of the alleged fraud 12 years before filing this bill, and that during all that time there existed no impediment to the filing of this suit. The suits they instituted or caused to be instituted by the administratrix, if they do not operate as a bar to the present suit, are, as stated in the pleadings, wholly insufficient as an excuse for so great a delay. The circumstances were such as to demand diligence in the assertion of any right which the complainants had to open up these

ancient transactions after learning of the fraud. Equity will not aid a slothful suitor to reopen so stale a matter, especially when the opposite parties are dead, and unable to give their explanation of the transaction.

The decree dismissing the bill for laches is affirmed.